JOSEPH GILMORE et al. v. WILLIAM BRIGHT and wife.

*Husband and Wife—Marriage—Contract—Vested Rights—Constitution—Homestead—Deeds..*

1. Where the title to land was acquired by the husband and the marriage contracted, prior to the adoption of the Constitution of 1868, no provision therein could divest his right to dispose of that property in any manner he might choose, without the consent of the wife.

2. If, however, the husband had procured a homestead to be allotted therein, or an allotment had been made in which he acquiesced, then the wife's right to a homestead would have arisen—subject to the rights of prior creditors—which could not be divested except by her deed duly executed.

3. While the State may prescribe the manner in which the title to property may be transferred, it cannot, under that power, prescribe a method which in effect will defeat a vested right to convey.

This was a CIVIL ACTION to recover land, tried before *Gilmer,* J., at February Term, 1888, of CHATHAM Superior Court.

It is alleged in the complaint that Samuel Gilmore died in 1874 or 1875, seized and possessed of the land described in the complaint, and the plaintiffs are his heirs at law; that after the death of said Samuel Gilmore, the defendant, William Bright, took possession of the land under an alleged purchase, and fraudulent and void deed, from Samuel Gilmore, and that they have recently discovered that the said Bright obtained possession of said land by fraud, which was not discovered by them till about March, 1886; that the deed or deeds to said Bright were not for the value of the land, but only as a security for an inconsiderable sum, which they are willing to pay; and they ask that the deed or deeds to the defendant be declared only a security, &c., and for an account, &c.

The material allegations of the complaint are denied, and the defendant also relies upon the bar of the statute of limitations. It is stated in the answer that the defendant did not take possession of the land till after the death of Samuel Gilmore, and that he "purchased with the understanding that he was not to dispossess Samuel Gilmore during his life."

The following issues, under the direction of his Honor, were submitted to the jury:

1 Are the deeds from Samuel Gilmore and wife to William Bright fraudulent and void?

2. Were the alleged deeds from Samuel Gilmore and wife intended and understood to be surety for money loaned?

3. Is the demand of the plaintiffs barred by the statute of limitations?

4. What is the annual rental value of said land and premises?

In response to the 1st and 2d issues the jury answered, "No."

Counsel for plaintiffs tendered another issue, to-wit:

"Did Samuel Gilmore die seized and possessed of the land described in the pleading?" This was refused and the plaintiffs excepted.

Plaintiffs offered in evidence two paper writings, purporting to be deeds of bargain and sale from Samuel Gilmore to the defendant William Bright, for the lands in controversy— one bearing date the 27th day of September, 1872, and the other bearing date the 29th day of August, 1872—one of which deeds only was signed by the wife of the said Samuel, to-wit: the deed executed on the 29th day of August, 1872. The privy examination of the wife of Samuel Gilmore was not taken to the deed which she signed, nor did it appear that she had ever given her free and voluntary assent to either of said deeds.

It further appeared in evidence that Samuel Gilmore had owned and occupied the land continuously for over forty years prior to his death in 1873 ; that he and his wife, Thany, were in possession at the date of the execution of said deeds, and so continued in possession up to the date of the death of said Samuel—his wife surviving him.

It further appeared from the testimony on both sides that Samuel Gilmore, at the time of the execution of said deeds, owned no other land, and the value of the land so conveyed was less than $1,000.

It was stated in the complaint, and was in evidence, that Samuel Gilmore purchased the land in controversy in the year 1815 and 1835, and that he intermarried with his wife, Thany, long before 1867.

The plaintiffs asked the Court to give the following special instructions:

"That if the jury believe that the land in controversy was the only land owned by Samuel Gilmore at the time of the execution of the deeds to Bright, that they were of the value of only $1,000, or less, and that himself and wife were living on the land at the time of the execution of the deed ;

that the said deeds were invalid and passed no title to Bright, it appearing from an inspection of said deeds that the wife of Gilmore was not privately examined in regard to her voluntary assent to the execution of the same, as required by the 8th section of the 10th Article of the Constitution of North Carolina."

His Honor declined to give this instruction, but told the jury "that inasmuch as Gilmore owned the lands, and was married prior to 1867, he had the right to convey them without his wife joining in the deed."

Plaintiffs excepted.

His Honor also instructed the jury "that if they shall find the deed from Samuel Gilmore to the defendant Bright void, then that Samuel Gilmore died seized and possessed of the land." There was a verdict and judgment for the defendant, and plaintiffs appealed.

*Mr. J. H. Headen,* for the plaintiffs. ·
*Mr John Manning,* for the defendants.

DAVIS, J., (after stating the case.) The first exception presented in the record is to the refusal to submit the issue tendered by the plaintiffs. It is insisted by counsel for plaintiffs that, as it was alleged in the complaint that "Samuel Gilmore died seized and possessed" of the land in dispute, and it was denied in the answer, it presented an issue which the plaintiffs had a right to have passed upon by the jury. It is admitted in the answer that Samuel Gilmore was not dispossessed during his life; it is admitted that he was in possession at the time of his death, but whether he was "seized and possessed" in the sense which carried with it the ownership of the land was properly presented in the issues submitted under the direction of the Court, and the

101—25

issue insisted upon was unnecessary, and if it could serve any purpose it would be only to mislead and confuse the jury.

The material questions, so far as they determined the ownership of the land in controversy, were, whether the deeds from Gilmore to Bright were fraudulently obtained, and whether they were intended only as a security for a debt. These questions were fairly presented by the issues submitted under the instruction of the Court, and there was no error in refusing the issue tendered. That there is no error in refusing to submit unnecessary or immaterial issues is too well settled to need citation of authorities.

2. The second exception was to the refusal of the Court to give the instructions asked for by the plaintiffs.

This exception is not well founded. The case shows that the lands in dispute were the property of Samuel Gilmore long prior to the adoption of the Constitution of 1868, and that he and his wife, Thany, were married long prior to that time. There never was any allotment of the said lands as a homestead, nor was there ever any petition by the said Gilmore to have such an allotment made, nor was there ever any act of his indicating any purpose, voluntarily, to have said land, or any portion thereof, dedicated to the purposes of a homestead. He had, prior to the adoption of the Constitution of 1868, the absolute right to sell or dispose of these lands as he pleased, without the concurrence of his wife, and, if he chose to do so, without her consent and against her will; and it is too well established by the authorities, Federal and State, that this right was not divested by Art. X, Sec. 8, of the Constitution, to be questioned now. The State could not, by its Constitution or its laws subsequently adopted or enacted, deprive him of his vested right to sell or dispose of the land in question, without contravening that provision of the Constitution of the United States which declares that no State shall pass any "law impairing the obligation of con-

tracts." Con. U. S., Art. I, Sec. 10. Unless a person whose lands were acquired prior to the adoption of the Constitution of 1868, and whose marriage was prior to that date, voluntarily surrenders his right of alienation as it then existed, it cannot be taken away from him. He may surrender this right by having the land allotted and set apart as a homestead, upon his own petition, or by acquiescing in such an allotment; but all his rights (except as they may be affected by his own acts) and the rights of his creditors, as they existed prior to the adoption of the Constitution, remain unimpaired. *Edwards* v. *Kearsey,* 6 Otto, 595; *Sutton* v. *Askew,* 66 N. C., 172; *Brice* v. *Strickland,* 81 N. C., 267; *Murphy* v. *McNeill,* 82 N. C., 221; *Reeves* v. *Haynes,* 88 N. C., 310; *Fortune* v. *Watkins,* 94 N. C., 304; *Castlebury* v. *Maynard,* 99 N. C., 285, and the numerous cases cited in these authorities.

3. The third exception was to the charge as given.

This exception cannot be sustained, and the reasons for overruling the second exception apply with equal force to this.

It was insisted on the argument of counsel for plaintiffs, that the constitutional provision—that " no deed made by the owner of a homestead shall be *valid* without the voluntary signature, and assent of his wife signified on her private examination according to law"—prescribed a mode by which deeds shall be executed, and that it is within the power of the State to regulate and determine the form and manner in which the deeds of its citizens shall be executed in order to give them validity.

Undoubtedly the State may prescribe the manner or form in which deeds, wills or other instruments shall be executed and proved, as that they shall be signed and witnessed, and acknowledged or proved before some designated officer, and regis'ered in a manner prescribed; but it can prescribe no

*mode* or *form* of *conveyance* by which a vested right is annulled or defeated. It cannot prescribe a *form* of *conveyance* that will defeat the *right* to *convey.* Gilmore had the *right* to convey the lands in question without the consent of his wife, and the State had no power to deprive him of this right by declaring that he should not convey without her consent.

There is no error.

Affirmed.