W. H. HUGHES, Ex'r, v. F. L. HODGES.

*Jus Disponendi—Homestead—Constitution, Art.* 10.

1. The *jus disponendi* is a vested right, protected by the Constitution of the United States, and by article 1, § 31, of the Constitution of this State; and is restricted only by provisions for dower and homestead, which restrictions must be so construed as to carry out the kindly purpose for which they were created, with no more restraint on the power of alienation than is necessary to make them effectual.

2. An unembarrassed owner of land, no matter when the land was acquired, can convey the same, absolutely. or by way of trust or mortgage, free of all homestead rights. without the assent of his wife. except in the following cases : (1) Where the land in question has been *allotted* to him *as a homestead,* either on his own petition or by an officer, in accordance with law; (2) where no homestead has been allotted, but there are judgments against him

which constitute a lien on the land, and upon which execution might issue and make it *necessary to have his homestead allotted;* (3) where no homestead has been allotted, but he has made a mortgage, reserving an undefined homestead, which mortgage constitutes a lien on the land that could not be foreclosed without allotting a homestead; (4) where the conveyance is fraudulent as to creditors, and no homestead has been allotted in other lands.

3. If a husband make a fraudulent conveyance of his land (the wife not joining in the deed), the proceedings of creditors to have the deed vacated inure to the benefit of the fraudulent grantor's family, because the creditors ultimately subject the *reversion* to the payment of their demands, while the wife and children of their debtor get the *homestead* in the land.

4. The mere fact that a man owes debts does not disable him from conveying his lands (free of all homestead rights) without the joinder of his wife, unless the deed be executed with intent to defraud his creditors, and no homestead has been allotted to him.

By MERRIMON, J., *dissenting.* The Constitution, Art. 10, by its express terms, as well as the spirit which pervades it and the judicial interpretation of it for the last twenty years, not only secures a home to an insolvent debtor and his family beyond the reach of the final process of a court, but goes further, and protects and secures to the wife and children a homestead estate in the lands of the husband and father independent of any actual allotment or defined location of the homestead. This homestead estate is protected against the reckless alienation of an improvident or vicious husband and father, by section 8, article 10, of the Constitution, which makes the joinder of the wife essential to every conveyance by a married man in order to pass title to his lands free of the right of homestead. This is true whether such land has been actually set apart and allotted as a homestead or not.

(The above is applicable, of course, to lands acquired since the Constitution of 1868, and to such lands, acquired before 1868, in which the husband has had a homestead *allotted.*)

PLAINTIFF'S APPEAL.

This was a CIVIL ACTION, heard before *Graves, J.,* at the Spring Term, 1888, of the Superior Court of NORTHAMPTON. County.

The plaintiffs are the executor and heirs-at-law of Samuel Calvert.

On the 8th of January, 1876, defendant executed three notes of that date, but falling due in one, two and three years after date, payable to said Samuel Calvert, and at the same time executed to said Calvert a mortgage deed, conveying thirty-five acres of land in Northampton County, to secure the payment of said notes. This action was brought to foreclose.

At the time when the defendant executed the mortgage deed (8th January, 1876), he owned no other land, except the tract conveyed in said deed, and another tract of two acres, both of which, together, are not worth one thousand dollars. The defendant acquired title to one undivided half interest in said land, in the year 1865, but did not become the owner of the other half until the ____ day of _____, 1876.

The defendant was first married in 1873, and his first wife was living on the 8th of January, 1876, but did not join in the execution of the deed. She died in the year 1881, and he married a second wife in the year 1882. This action was brought in June, 1879, after the last of said notes became due.

The defendant contended, that the deed, or writing purporting to be a deed, executed by the defendant, on the 8th of January, 1876, was void, as·a conveyance, and that no interest in said land passed by said deed.

The plaintiffs insisted, on the other hand, that the deed was valid without the joinder of the wife in its execution, and vested the title to the whole of said land in fee simple in Samuel Calvert, subject to the trusts set forth therein.

The Court adjudged, that the defendant and all persons claiming under him be " foreclosed of all equity of redemption in and to the reversion in the land mentioned in the complaint," after the termination of the homestead estates,

and ordered that a commissioner sell the reversion. unless the debt adjudged to be due from defendant should meantime be discharged.

Both plaintiffs and defendant appealed, and both cases are considered together, the appeal of plaintiffs being the first in order.

*Mr. T. W. Mason*, for the plaintiff.
*Mr. R. B. Peebles*, for the defendant.

AVERY, J. (after stating the case). When we approach the consideration of the question, whether the organic law or the statute law shall be so construed as either to preserve unimpaired or to greatly restrict the right of the citizen to alien his own land, it is wise to recur to the fundamental principles embodied in our State and National Constitutions, or the elements of the common law that have proven consistent with the genius of our institutions.

Every citizen has the right to enjoy the fruits of his own labor, and when his earnings are invested in land, the rule is that he acquires with the title the incidental right of absolute and unrestrained alienation. The few instances in which the law has trammeled the citizen in the exercise of this power, in order to reach some beneficial end, are the exceptions that establish instead of destroying the rule. The *jus disponendi*, subject only to the exceptions hereafter mentioned, is a vested right, protected even against hostile State legislation, by that clause of the Constitution of the United States which prohibits the enactment of any law impairing the obligations of a contract. *Bruce* v. *Strickland*, 81 N. C., 267.

In our Declaration of Rights (Cons., Art. 1, sec. 31), more than a century since, perpetuities were coupled with monopolies, and denounced as " contrary to the genius of a free State."

This was followed by the act, passed in the same spirit, which converted a fee-tail estate in its very inception into a fee-simple, with the incidental right to sell, and with the avowed object of attaching the absolute *jus disponendi* to the estate created.

It has been repeatedly declared to be sound public policy to remove every obstacle to the ready sale of real estate upon the market, in order to benefit commerce and thereby promote general prosperity. It was in furtherance of this object that our General Assembly, but a few years since, so altered our registration laws that persons proposing to purchase land could be well advised as to the title by a careful inspection of the public records.

This leading purpose is subordinated, however, to two wise provisions for women and children—dower, a creation of the common law, and the homestead, which is imbedded in the organic law; but, while the humane exemption clauses of the Constitution have found favor with the courts, they have been carefully so construed as to carry out the kindly purpose for which they were created, but to restrict alienation only so far as is necessary to effectuate that object.

If we will bear in mind, in the progress of this discussion, how essential to the protection of the rights of the citizen and how important to the promotion of commercial prosperity it is to guard well the right of alienation, and to restrict it only so far as is necessary in order to extend the blessings of a homestead to those for whose support it was intended, we will find it a beacon-light to guide us safely through the mazes of conflicting authorities, emanating from more than a score of appellate courts, when the true way to steer through the sea of doubt and perplexity might otherwise be obscured. What was the legislative intent in enacting laws providing for the exemption of homestead and fixed amounts in value of personal property from sale under execution? A few definitions of a homestead given by the

different courts of the Union will show what they have declared was the object of the law-making power in enacting them.

The homestead law was called by the Supreme Court of California "a beneficent provision for the protection and maintenance of the wife and children against the neglect and improvidence of the father and husband."

This Court has declared that the purpose was to provide every man a home for his wife and children. *Jacobs* v. *Smallwood*, 63 N. C., 112.

We must acknowledge that there is some conflict between *Adrian* v. *Shaw*, 82 N. C., 474, and the authorities there cited (*Gheen* v. *Summey*, 80 N. C., 187, and *Lambert* v. *Kinnery*, 74 N. C., 348), on the one hand, and the cases of *Hager* v. *Nixon*, 69 N. C., 108, and *Mayo & Parker* v. *Cotten*, 69 N. C., 289, on the other; and the inconsistency of the authorities as to the true interpretation to be given to section 8, Article X, must be removed, either by modifying the abstract rule laid down in *Adrian* v. *Shaw*, *supra*, or by directly overruling the plain principle announced in *Mayo* v. *Cotten* as the only safe solution of all the cases that might depend upon the true meaning of the restriction contained in said section.

In *Gheen* v. *Summey*, *supra*, the Court say: "It is the settled construction of this Court, that the homestead right is a quality annexed to land whereby an estate is exempted from sale under execution for a debt, and it has its force and vigor in and by the Constitution, and is in no wise dependent on the assent or action of the creditor; and therefore it results, as has been expressly held, that the action of the sheriff, in assigning the same by metes and bounds, is not needed to any extent to vest the title, but merely as finding the *quantum*, so as to enable him to ascertain the excess, if any, and levy on and sell it."

The only question that arose out of the facts of that case was, whether a previous appeal by the judgment creditor to

the Township Board of Trustees (under Bat. Rev., ch. 55), to have a new allotment of homestead afterwards, to satisfy a debt created before 1868, the creditor having sold the excess previously and soon after allotment. Only the constitutional construction established by *Edwards* v. *Kearsey* was involved in the case, and therefore the definition of the homestead given was *obiter*. So much of the definition as is taken from *Littlejohn* v. *Edgerton* is not inconsistent with the principle laid down in *Mayo* v. *Cotten;* but in the later case of *Adrian* v. *Shaw,* the Court not only repeated the definition given in *Gheen* v. *Summey* (the latter part of which was taken from *Lambert* v. *Kinnery*), but added to the definition another quotation, in substance at least, from the latter case, as follows: "Title to the homestead can only be divested in the mode prescribed in section eight, Article X, of the Constitution."

As we shall see presently, the facts did not in either case warrant the giving of any general definition of a homestead, and that given was unnecessary.

In *Adrian* v. *Shaw,* the facts were, that one Jackson and wife joined (with privy examination of the wife in proper form) in conveying, on April 22, 1872, the only tract of land that Jackson owned, and which was worth less than one thousand dollars, but no homestead had been laid off in the land. Jackson and wife left the State, and, after they had left, execution issued in 1874 on a judgment docketed November 20, 1871, against Jackson, in the county where the land was located. The plaintiffs, Adrian and Vollers, purchased at the execution sale, and the question presented and decided was, whether the deed of Jackson and wife conveyed any estate in the land to their grantee, and whether Adrian and Vollers had a right to recover possession from the grantee of Jackson and wife.

The Court held that Shaw took, under the deed from Jackson and wife, an estate, at least for the life of Jackson,

because the sale was made subject to the right of a judgment creditor, who already had a lien upon the land, with the incidental power to have the homestead allotted in it, and sell the excess, if any.

In *Lambert* v. *Kinnery*, the facts were, that a Sheriff sold all of the land of a debtor without having a homestead assigned him in it, and the plaintiff was the purchaser at execution sale. It was also in evidence that the defendant (the debtor) had declared at the court-house door, while the Sheriff was selling the land, that it did not belong to him, but to another. The case, therefore, involved both the question, whether the homestead right could be surrendered by the owner by estoppel *in pais*, and whether the Sheriff could defeat the right by refusing to allot. The idea, therefore, that the homestead right so vested, by operation of law, in every owner of land, that it could not be divested except by a conveyance executed in accordance with the provisions of section 8, Article X, must have been advanced with a view to the facts of that case only, because, to accept and interpret the language literally, and apply it to all cases, would lead us into many contradictions, not to say absurdities.

Unless the language of the Court in *Adrian* v. *Shaw*, interpreted in its broadest sense, shall be held to bind this Court to a construction of the Constitution fraught with consequences so serious, we are still at liberty to consider and determine whether section eight, Article X, of the Constitution, deprives the husband of the power to convey an unascertained homestead, when not subject to any lien, as well as one already laid off, either on petition of his own, or by an officer who has an execution in his hands.

The case of *Littlejohn* v. *Edgerton* was twice before this Court; so far from justifying the limitation which is contended for by the defendant, upon the power of sale on the part of the husband in a case like this, the facts and the reasoning

of the Court in both cases tend rather to sustain the opposite view of the case. In the first appeal (76 N. C., 468), it appeared that the homestead had been first allotted, so as to cover a portion of Littlejohn's land, and the excess was sold to satisfy executions in favor of his creditors, and subsequently that Littlejohn consented to the sale of the homestead, and that his conduct at the time of, and his language in reference to it, were such as to amount to an estoppel *in pais*.

The Court held that he could not waive his right of homestead in favor of his creditors, except by a deed in which the wife should join with privy examination.

In the second appeal (77 N. C., 379), a doubt was suggested whether Littlejohn's homestead had been laid off so as clearly to define it by metes and bounds.

The Court held that " *the right of homestead* was a quality annexed to land (like a condition) whereby an *estate is exempted from sale under execution for debt, and cannot be defeated* by failure of the Sheriff to have the homestead laid of by metes and bounds."

The two cases presented singly the two points that had been decided in the case of *Lambert* v. *Kinnery, supra,* at one view.

All of these rulings looked to the beneficent end of protecting the home of the family, when the husband or father was embarrassed with debt and pursued by his creditors, either against his own improvidence or the misconduct of officers. The homestead right would be worse than a delusion if it could be defeated by language, used either by accident or design, by the drunken or reckless owner, or by the arbitrary refusal of an officer to have it ascertained by metes and bounds.

But the question fairly presented, by both appeals in this case, is not whether the owner of an unallotted homestead can always, by a conveyance executed without the joinder

and privy examination of his wife, defeat her right or that of his children to a homestead in the land, but whether he has the power to alien all of his land before a part or the whole is designated by law as an actual homestead, subject to the dower right of the wife, and, where the husband is free from debt, to no other incumbrance.

In *Hager* v. *Nixon*, Justice RODMAN, for the Court, says: "It seems that the idea of a homestead which the framers of the Constitution had in mind, was ownership and occupancy of land exempted from execution obtained on any debt during the life of the owner. To this original conception was added a continuance of the exemption during the minority of any one of the owner's children; and if he died leaving *no* children, but a widow, the exemption continued during her life. The idea apparently was, that the exemption should attach to the property of the owner, or some part of it, during her life-time."

We infer this from section 3, Article X, of the Constitution: "The homestead, after the death of the owner thereof, shall be exempt from the payment of any debt during the minority of the children, or any one of them." It is implied, that the ancestor had been owner of the homestead, by which, in this connection, *must be meant a part of his property set apart and designated as exempt and not* merely land occupied and *owned by him.* And so section 5, Article X, Constitution, is as follows: "If the owner of a homestead die, leaving a widow, but no children, the same shall be exempt from the debts of her husband, and the rents and profits thereof shall inure to her benefit during her widowhood, unless she be the owner of a homestead in her own right."

"The whole design of the Constitution, so far as can be gathered from Article X, *was to exempt property of a debtor to a certain value* from execution. * * *

*The purpose of a homestead law is to regulate between a debtor and his creditors, and to affect other interests, incidentally only, and to the least possible degree consistent with its main purpose.*"

No explanation is needed for quoting so extensively from that opinion, as it has a broad foundation for the rule that is decisive of this case. A land-owner who is not in debt may convey his land, that has never been allotted to him as a homestead, without the joinder of the wife in the deed, subject only to her right of dower, if she survive him, but free from any restriction growing out of the provisions of section eight, Article X, of the Constitution, whether his land was acquired or his marriage was celebrated before or after the Constitution of 1868.

The main purpose being to protect the family against the creditor, why should the law needlessly interpose, with mailed hand, when a thrifty man, who owes nothing and holds his land unincumbered, attempts, it may be, to realize a handsome profit by a sale to one who is willing to incur the risks of the survivorship and incident rights of the wife, or to allow a satisfactory discount for such risks?

While both live, a dutiful wife can compel her husband, if he have means, to support her according to her station in life; and if she survive him, any land of which he was seized during coverture is subject to her claim of dower.

If the husband make a fraudulent conveyance (the wife not joining in the deed), the proceeding of the creditor to have the deed vacated inures to the benefit of the family, because the creditor ultimately subjects the reversion to the payment of the debt, while the wife and children of the debtor get the homestead in the land. The validity of the husband's conveyance is, therefore, subject also to the restriction, as all deeds should be, that it shall be made in good faith. *Crummen* v. *Bennett,* 68 N. C., 494 ; *Arnold* v. *Estis,* 92 N. C., 162. But in *Mayo* v. *Cotten* the queston presented was, whether the owner had the right to select his homestead in any land for which he had title. After declaring that the owner might, under the Constitution, locate his homestead, without any restriction, in any tract of land owned by

him, the Court says in that case, what seems to be decisive, in the very plainest terms, of both appeals brought up in this action: " Neither is it material that the wife of the defendant did not by deed assent to his receiving a homestead in the Swamp place. *Section* 8, *Article X, of the Constitution, applies only to a conveyance of the homestead after it is laid off."*

After deciding that the husband might determine, as between the different tracts of land, the location of the homestead without the assent of the wife, the Court went further and construed section 8 to apply only to allotted homesteads, evidently having in view the possible difficulty that might grow out of conceding to the owner the power to select as between a number of tracts of land, and determine in which one his homestead should be marked out   Suppose the owner, being free from debt, should convey all of his land, including a dozen tracts, any one of which was worth more than a thousand dollars, and to a dozen different persons, but his wife should fail to join in the conveyances to any one of the grantees, and no homestead had been allotted.   Suppose, then, that he should invest the proceeds of the sale in a dozen other tracts of land. If financial misfortune then overtake him, surely it would not be contended that all of the conveyances were void, or even that they were effectual to pass only the reversionary interest. He could not take a homestead in all of the tracts, and it would be absurd to allow him to incumber a particular one, at his option, and in the face of his own deed

The only safe rules as to the meaning of § 8, Art. X, Cons., must be deduced chiefly from the two cases last cited. When there is *no* creditor there is no reason for restricting the owner in the sale of land, not allotted as a homestead, by any construction placed upon that section, because the whole plan of homestead exemptions was formed for the purpose of affording protection against debt.   But it does not follow, from the mere fact that a man owes debts, that section 8,

Article X, of the Constitution, is to be construed to disable him from conveying his land without the joinder of his wife, unless the deed was executed with intent to defraud his creditors, and no homestead has been allotted to him, or unless the land conveyed by him is subject to a lien of a judgment or a mortgage reserving the homestead right, that cannot be enforced without allotting a homestead, in order to ascertain and subject to sale the excess.

The rule stated in *Mayo* v. *Cotten* is so far modified, therefore, as not to apply when the owner of land is embarrassed with debt and his land is subject to be sold to satisfy a lien. It was not the intention of the framers of the Constitution to restrict the rights of thrifty and successful men, who ask and need no such interference in their affairs. Hence, when the sheriff holds executions against a debtor, the latter will not be allowed, ignorantly or by collusion with the creditor, to conclude himself from the right to claim a home by the use of any mere words. It was never intended that an effectual estoppel should be so created, and allowed so easily to defeat the leading purpose apparent in Article X of the Constitution—the protection of the debtor's family.

The ideal homestead, created by the Constitution and located by proceedings under the statute, is born of financial embarrassment, and exists as to any given body of land only when the creditor can arm the sheriff with power to sell it to satisfy a judgment; or a mortgagee, holding subject to an express reservation of·the right of homestead in the land mortgaged, has the right to foreclose, and what is exempt has not already been located as the law prescribes; or, where the debtor has executed a deed to land with intent to defraud creditors, and has no homestead allotted to him in other lands. The Constitution does not annex the quality to the land, of one who is free from financial embarrassment, for the right operating, as it does, to exempt an estate from sale for debt—must of necessity be the creation of debt.

In *Markham* v. *Hicks*, 90 N. C., 204, this Court held, that the effect of the assignment of a homestead was simply to attach to an existing estate the quality of exemption from sale under execution, and the designation of the homestead right as "a quality annexed to the land, whereby the estate is exempted from sale under execution," was an inadvertent and inaccurate expression, in so far as it conveyed the idea of carving new estates out of the land of the debtor. But, in either view of the nature of the homestead right, there can be no doubt that it relates to and grows out of debt, and exempts land from sale under execution for debt. The definition given in *Littlejohn* v. *Edgerton* has been repeated only because it still stands as a part of the later definition given in *Adrian* v. *Shaw* and *Gheen* v. *Summey.* We cannot reconcile the decisions in all the cases cited, upon any other principle than this. In corroboration of this view, we find that not only was it held by this Court that the Constitution allowed the owner to determine where the homestead should be laid off, but it has been expressly held, that where land was acquired by a husband, and the marriage was celebrated before the Constitution of 1868 was ratified, the husband had a vested right in the land and could convey it without the joinder of the wife, unless the husband has either had the homestead allotted, on his own petition, or it has been laid off by an officer according to law. *Bruce* v. *Strickland,* 81 N. C., 267; *Sutton* v. *Askew,* 66 N. C., 172; *Castlebury* v. *Maynard,* 95 N. C., 281; *Gilmore* v. *Bright,* 101 N. C., 382.

In the case of *Lee* v. *Mosely,* 101 N. C, 311, this Court held that a homestead in land in this State would be deemed abandoned by the owner if he should move his residence to another State, and the Court were united as to that view. The case is cited merely to call attention to the fact that a right of homestead can be abandoned without a deed, in which the wife joins with privy examination, and if the rule stated in *Adrian* v. *Shaw, supra,* is to be taken literally and

construed to mean that all land vests in all cases, without exception, before allotment as a homestead, and " can only be divested in the mode prescribed in section 8, Art. 10, of the Constitution," then a change of residence to another State, not being the mode prescribed in said section, would not have divested the right of homestead out of the claimant in that case.

Moreover, if we accept the theory, in its broadest sense, that the law so vests a right of homestead in every man who holds title to land, that it cannot be divested except in the manner prescribed in said section, it would follow that the owner would be compelled to marry and procure the joinder of his wife, with privy examination, in order to make a valid title to a purchaser of his land, because he could not otherwise comply with the rule literally construed and enforced.

It would astound the members of the legal profession, and the people of the State generally, to be informed that a phrase, apt to be repeated inadvertently, even by courts, because it is concise and euphonious, though uttered heretofore unnecessarily, will be adhered to, with the result of making utterly void every deed that has not the sanction of a wife. It would seem consonant with reason, as well as the express authority of *Hager* v. *Nixon* and *Mayo* v. *Cotten*, to construe the language quoted in *Adrian* v. *Shaw, Lambert* v. *Kinnery*, in the qualified sense which we have suggested as the true meaning. As between the creditor having a lien, on the one side, and the debtor and his family on the other, the Constitution does create *a right to a home* for the benefit of the debtor's family in his lands—a home that may never be marked out by metes and bounds. The debts may be discharged before the homestead is alloted, and then the inchoate right, as applied to the debtor's land, no longer exists. But when the creditor reduces his claim to judgment, the law places him and the debtor at arm's length, and frustrates every effort of either to evade the section of

the Constitution, that gives the wife the veto power, by requiring an allotment of the homestead as antecedent to any sale, and her assent, with privy examination, before the improvident husband can dispose of it; so, if the debtor sells to defraud his creditor, when the latter moves in the Court to set aside his deed and subject the land to his claim, the Constitution gives first the right to an undefined homestead, and the law, made in pursuance of the Constitution, ascertains its bounds so soon as he seeks to sell.

Until the owner contracts debts, there can be no undefined homestead right, attaching to his land, and, unless his homestead has already been allotted, section 8, Article X, of the Constitution, does not restrict his power to convey. If, however, the homestead has once been laid off at the instance of creditors, though the debts may be discharged, the restriction remains, and renders the joinder of the wife essential to a valid conveyance of it. The definition given in *Adrian* v. *Shaw* must be considered as modified and restricted in its application, so as to conform to the views we have expressed in this opinion. The defendant conveyed his land by mortgage deed, to secure money (loaned to him on the land, as we infer). Until proof to the contrary is offered, the presumption is in favor of this power to convey, and the defendant offers no evidence of the existence of a debt in judgment against himself. For the purpose of this discussion there can be no difference between a mortgage and an absolute deed. His first wife, who was then living, did not join, and did not, therefore, convey her right to dower, had she survived her husband. But she died in 1881, and it is not necessary to discuss the rights of the defendant's second wife. It is sufficient to say, that neither she nor any other person can be allowed a homestead in the land. No homestead having been allotted before the deed was executed in 1876, or since, the deed of the defendant to the plaintiff's testator was

valid, and passed the land to the grantee for the purposes mentioned therein, subject only to a contingent right no longer hanging over it.

We therefore hold, that the Judge erred in ordering the ·sale of the reversionary interest, and should have adjudged that the entire interest, instead of the reversionary interest only, be sold, unless the debt should be paid by the time mentioned.

In the plaintiff's appeal there was error. Let this opinion ·be certified, to the end that the judgment may be modified.

Error.                                        Modified.


MERRIMON, J. (dissenting). I cannot concur in so much ·of the opinion of the Court in this case as declares and decides that a resident of this State, having a·wife, and land in which he has a homestead, can make a valid sale and ·conveyance thereof, not subject to but divested of the right of homestead therein, "without the voluntary signature and assent of his wife, signified on her private examination according to law," if such sale and conveyance ·shall be made *before* the homestead shall be valued and laid off as prescribed by the statute; nor in the interpretation given of numerous decisions of this Court cited in the course of the opinion, some of which I will advert to presently.

The Constitution (Art. X, §§ 2, 3, 5, 8) provides as follows: "Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or, in lieu thereof, at the ·option of the owner, any lot in a city, town or village, with the dwelling and buildings used thereon, owned and occupied by any resident of this State, and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt. But no property shall be exempt from sale for taxes or for payment of obligations contracted for the purchase of said

premises. The homestead, after the death of the owner thereof, shall be exempt from the payment of any debt during the minority of his children, or any one of them. If the owner of a homestead die, leaving a widow, but no children, the same shall be exempt from the debts of her husband, and the rents and profits thereof shall inure to her benefit during her widowhood, unless she be the owner of a homestead in her own right. Nothing contained in the foregoing sections of this article shall operate to prevent the owner of a homestead from disposing of the same by deed; but no deed made by the owner of the homestead shall be valid without the voluntary signature and assent of his wife, signified on her private examination according to law."

Thus, *the homestead exempt from such sale for the time specified*, is created, defined with particularity and much in detail, and is given and secured to every resident in this State, if he shall have a homestead. Nothing is left to statutory regulation, except to prescribe how it shall be valued and laid off.

Unquestionably, the makers of the Constitution had the power and authority to make such an organic provision, and they were the judges of the propriety and expediency of it. It seems to me that the plain purpose and effect of it was to create and give directly to every resident of this State the right to have his homestead—the place where he lives or might select to live—in the measure and way and for the time prescribed, "exempt from sale under execution or other final process obtained on any debt," and that such right attaches to any land he may have as homestead, when and as soon as he has the same, and, having attached to the land, it remains and runs with it, and the latter cannot be divested of it while the owner continues to be a resident of this State, until the wife, if there be one, shall give her assent to a conveyance of it to some person, by the owner thereof, in the way prescribed. It is not contemplated or intended that

such right shall arise and spring into active operation, and have force and effect only when the owner of the homestead shall be in debt, or when there shall be docketed judgments against him, or when executions shall be going against his real property, but it arises presently out of and continues to exist and run with the land, as indicated per force of the Constitution, whether the owner is in debt or not, ready at all times to serve, and at all times serving, the beneficent purpose of preventing the sale of the homestead, as defined, under such legal process as that mentioned, whenever and however the occasion for such active prevention may arise or come about. The right of exemption ever accompanies and attaches to the homestead as defined by the Constitution, and the title of the owner to it can pass, when he has a wife, only with her assent signified in the way prescribed.

It is not true that the homestead right is operative and beneficial only when the owner is in debt, or pressed by "final process, obtained on any debt." It is ever operative; the owner, though he might owe nothing, and be possessed of great wealth, has it; his wife and children have the benefit of it, and he could divest himself of it only with the assent of his wife. He might have it valued and laid off to him, at any time, though ordinarily he would not do so. The statute (*The Code*, § 511), so expressly provides.

A leading and important feature of the purpose is, when the husband has a wife, to secure the benefit of the homestead to her and the children of the marriage against the possible reckless trading adventures, improvidence and dissipations of the husband. It is not intended that he shall have power as to the homestead, to deprive his wife and children of a home. Justice and sound public policy forbid that he shall have unrestricted power to do so. Hence, the broad and strong provision, that "no deed made by the owner of the homestead shall be valid without the voluntary signature and assent of his wife, signified on her private examination according to law."

While the wife lives the husband can make no valid sale of the homestead without her assent so given; and it makes no difference whether the homestead has been valued and laid off or not, as provided by the statute, because the homestead exemption from such sale is given by the Constitution and not by the statute. The latter is only in aid of the former, and its purpose is simply to locate and ascertain where the homestead is, its value and boundaries. The limitation upon the husband's power to sell it without the wife's assent is very broad and comprehensive. The words employed are, "no deed made," &c., implying no sale of it shall be valid without her assent. There is nothing in the Constitution, nor in the statute, that, in terms or by the remotest implication, gives the husband power to sell it without the wife's assent before it is valued and laid off to him; but there are there words of inhibition and limitation upon his power, strong and broad as they can be  It is not provided particularly that he may sell it before or after it is valued and laid off, without her consent, but that he shall not sell it at all without her consent.

In view of the important purpose to be subserved by such limitation upon the husband's power of sale, can any good and substantial reason be assigned why he should be, by implication, allowed to sell it without the wife's assent before it shall be valued and laid off? I can conceive of none whatever; but I can readily suggest grave ones why he should not be allowed to do so. He may not be embarrassed and his homestead imperiled by docketed judgments and executions—he may be free from debt, but he may be a reckless, adventurous trader; he may be improvident and hazard his home on a single transaction; he may be dissipated, drunken, a desperate gamester, and turn his wife and children out of doors, homeless, upon the turn of a die or the result of a game of cards. This he might, could, accomplish if he could sell and convey the homestead without the wife's assent. He might wilfully

refuse to have his homestead valued and laid off to him, to the end he might sell it, untrammeled by the wife. Such a man would have a motive more or less controlling, impelling him to refuse to do so. The very purpose of the limitation is to cut off, as far as practicable, such possibilities—to protect the wife and children against such husbands and fathers; and they may, would, often need such protection as certainly before as after the homestead shall be valued and laid off.

It is a serious mistake to conclude that the homestead provision is intended simply to protect the debtor and his family against the creditor—it as certainly intends further to protect the wife and children against the shortcomings of the reckless, unworthy husband and father. The second section of the article of the Constitution recited, creates, defines and gives the right of homestead, and protection as to it, against the creditor; the eighth section thereof affords protection against the husband in the restriction upon his power of alienation of it. This section is certainly intended to serve this purpose; otherwise, it is meaningless and nugatory. And such protection is intended to be incident to, and continuous with, the homestead as long as it lasts, if there be a wife and children of the owner of it.

It is said that the homestead provision is a restriction upon, and embarrassing to, the freedom of trade and the transfer of real property, and so it is, to some extent; but the end to be secured by it is one of great moment to the Commonwealth, society and families. It is of much consequence that families—wives and children—shall have homes—homes that they cannot be ejected from by the creditor of the husband and father, and that the recreant and faithless father cannot drive them from. This is quite as important as trade, and the people did wisely when they so provided in their organic law. A constitutional provision, so beneficent in its spirit, is not to be so strictly construed in the interests of

trade as to impair and destroy, in great part, its efficiency. The law favors the freedom of trade, but it as well and as certainly favors the right of homestead, and there exists not the slightest reason of policy why plain words and phrases should receive strained and unnatural interpretation to the prejudice or abridgment of that right. Besides, as I have, said, the makers of the Constitution had the power and authority to make such organic provision, and it is not to be impaired by interpretation founded in reasons of supposed policy.

The restriction upon the husband's power of alienation of the homestead in favor of the wife and children is no more objectionable than that upon his power to alien his land in favor of his wife as to her right of dower therein. He cannot sell and convey his lands free from the wife's right of dower, unless she shall join in the conveyance. No more can he sell and convey the right of homestead without her consent.

The conditions of society require such restrictions upon the hurry of trade; they are essential to its good and the common good. It is said the restriction upon the husband's power of alienation of the homestead, before it is valued and laid off to him, will give rise to confusion and inconvenience, and the inquiry is propounded, suppose the husband should in such case sell his lands in parcels, without his wife's assent, to numerous persons, in which parcel would the homestead be located? The answer is not difficult. The husband shall not sell the homestead, or any land subject to it, without the assent of the wife. Whoever buys without it does so at his peril, and he takes subject to the right of homestead, to be asserted freely upon any part of or all the land, just as the purchaser of the land of the husband would take it subject to the right of the wife to dower therein, if she failed to join in the conveyance thereof, and she would

take her dower therein, if she should survive her husband, just as if no sale of the land had been made by the husband in his life time. Such objection seems to me to be without force. Surely it has not such weight as to warrant the strained construction the Court puts upon the limitation upon the husband's power in question.

It seems to me that what I have thus said is reasonable and just. It is fully sustained by a multitude of decisions of this Court, made in the course of the last twenty years, and I will now advert to some of them.

In *Lambert* v. *Kinnery*, 74 N. C., 348, the defendant was a resident of this State, and had land—that then in question—which was all he had, and which was sold by the Sheriff under execution, but he failed to have the homestead of the defendant, at or before the time of sale, valued and laid off to him. Hence, the plaintiff, the purchaser at the sale, contended that the defendant had no homestead, that none had been allotted to him, and his remedy was against the Sheriff. But the Court held otherwise—that he had a homestead, saying that "this allotment of a homestead by the Sheriff was not required in order *to vest the title to it in the owner*, for that is done by the Constitution, but for the purpose of ascertaining if there was any excess, which only was the subject of levy and sale. * * * The defendant, having a vested estate in the homestead, conferred by the Constitution, can lose or part with it only in the mode prescribed by law, to-wit, *by deed, with the consent of the wife, evidenced by her privy examination.*" The Court held in that case, that the defendant therein had his homestead exempt from sale under final process, although it had not been valued and laid off by virtue and per force of the Constitution, and hence he could not sell and convey it without the assent of the wife.

In *Beavan* v. *Speed*, 74 N. C., 544, the owner of the homestead had stipulated in a promissory note that he waived "the benefit of the homestead," &c. The Court said: "It is

clear that the owner of a homestead is not the only object of solicitude and care in our fundamental law, but the wife, if there be one, and children, if there be any, have rights in the homestead, *fixed by the Constitution*, which cannot be divested, save in the manner prescribed by that instrument, to-wit: by the deed of the owner, accompanied by the voluntary signature and assent of his wife, signified on her private examination, according to law.   *   *   *   This is justly considered one of the most beneficent provisions of the Constitution.   But the construction contended for by the plaintiff, if adopted, would entirely defeat it, and would enable a thriftless husband, by a dash of a pen, to turn his wife and children out of house and home."

In *Abbott* v. *Cromartie*, 72 N. C., 292, the Court held, that " the defendant owned the legal estate in the land, and the Constitution confers no new estate upon him, but only confirms an existing one, to the extent therein expressed, and restricts his powers of alienation, and to charge it with his debts.   Having, then, the estate in the land exempt from execution, he can part with it only by the formalities prescribed by law."

In *Littlejohn* v. *Egerton*, 76 N. C., 468, the Court said: " The Constitution, Art. X, § 8, permits a husband to dispose of his homestead *by deed*, provided the wife signs the deed, and is privily examined according to law. So the idea of an estoppel by matter *in pais* is out of the question." This was material in support of the decision of the Court.

In *Bank* v. *Green*, 78 N. C., 247, the Court said: " The homestead is not the creation of any new estate, vesting in the owner new rights of property.   His dominion and power of disposition over it are precisely the same after, as before, the assignment of homestead." The wife must, therefore, join in the deed of conveyance of the same to make it effectual.

In *Murphy* v. *McNeill*, 82 N. C., 221, the Chief Justice said : " The land having been acquired since the adoption of the

Constitution (1868), and the enactment of the law to carry into effect its provisions, for a limited exemption of the debtor's property, is subject to the homestead, and the deed made without the wife's assent is inoperative to defeat the right thereto."

In *Jenkins* v. *Bobbitt,* 77 N. C., 385, it is held that "the husband's deed, without the wife's concurrence, is effectual in passing what is called his estate in reversion, or, in other words, the land itself, subject to the burden or incumbrance of the homestead as defined in the Constitution, and that the title to this can only be divested in the mode therein pointed out. *Lambert* v. *Kinnery,* 74 N. C., 348; *Beavan* v. *Speed, ibid.,* 544.

" The right to the homestead exists by virtue of positive law, and laying it off by metes and bounds is only necessary in ascertaining if there be any, and the extent of the excess, which may be appropriated to the demands of creditors. It follows, therefore, that while the plaintiff cannot deprive the defendant of the possession of the land, he is entitled to a decree of foreclosure and sale of the land charged with the homestead incumbrance."

This case is directly in the face of what is decided in the present case, and expressly decides that a sale of the homestead, not valued and laid off, is void without the assent of the wife.

In *Adrian* v. *Shaw,* 82 N. C., 474, the Court said: " The homestead is a right defined and secured by the Constitution, and vests in the resident owner of the land, independent of any legislation on the subject." * * * Cooly, on Constitutional Limitations, says: " The provisions of the Constitution which define a homestead and exempt it from forced sale are self-executing, at least to this extent, that it may admit of supplementary legislation in particulars, when itself is not complete as may be desirable, it will override and nullify

whatever legislation, either prior or subsequent, would limit or defeat the homestead which is thus defined and secured."

" And in this State it is held that the homestead right is a quality annexed to land whereby the estate is exempted from sale under execution for a debt, and it has its force and vigor in and by the Constitution. * * * This Court held that the title to the homestead is vested in the owner by virtue of the Constitution of the State, and no allotment by the Sheriff is necessary to vest the title thereto."

This case is an important one, and much in point. It was well and thoroughly considered. There was an application to rehear it (*Adrian* v. *Shaw*, 84 N. C., 832), and the Court declared, upon such application, their entire satisfaction with what was said and decided by it.

The following named cases are all more or less to the same effect: *Jenkins* v. *Bobbitt*, 77 N. C., 385; *Wharton* v. *Leggett*, 80 N. C., 169; *Gheen* v. *Summey*, *ibid.*, 187; *Watkins* v. *Overby*, 83 N. C., 165; *Wyche* v. *Wyche*, 85 N. C., 96; *Burton* v. *Spiers*, 87 N. C., 87; *Cumming* v. *Bloodworth*, *ibid.*, 86; *Murchison* v. *Plyler*, *ibid.*, 81; *Mebane* v. *Layton*, 89 N. C., 399; *Markham* v. *Hicks*, 90 N. C., 204; *Castleberry* v. *Maynard*, 95 N. C., 281.

I believe I am fully warranted in saying that no case pertinent here, decided by this Court, can be found in substantial conflict with what is said and decided in the numerous cases I have cited above. In *Mayo* v. *Cotten*, 69 N. C., 289, the learned Judge who delivered the opinion said, *obiter* simply, that " section 8, Article X, of the Constitution, applies only to a conveyance of a homestead after it has been laid off." This remark is made at the end of the opinion, no reason is given for it, and it was not at all material to what was decided.

I cannot help thinking that the opinion of the Court in this case is a substantial departure from the settled and

proper interpretation heretofore given to the clauses of the Constitution recited above, and that it will have the effect materially to impair the more important and beneficent features of the homestead established by the Constitution.