1. On and prior to 15 January, 1892, the plaintiff A. W. Thomas was seized in fee simple of a lot or parcel of land situated in Beaufort County and in the town of Washington, viz.: A lot of land in that part of said town known as "Bonner's Old Part," and being a part of Lot No. 26, and being the part thereof occupied by the store building now rented to S. H. Reid and fronting on Market street twenty and one-half feet and running back from said street fifty-five and one-half feet, it being all that part of the quarter lot conveyed by Thos. P. Bowen, and wife to said A. W. Thomas, except that hereinafter to Mary W. Bowen, and being the same parcel of land also described in a deed, A. Mayo and S. R. Fowle, trustees, to Joseph W. Bowen, and attached as Exhibit B. 2. That on the said 15 January, 1892, the said A. W. Thomas (his wife not joining therein) executed a deed in trust to A. Mayo (668) and S. R. Fowle, trustees, in which he conveyed all his property, including the above-named lot of land, in trust for the benefit of his creditors. In said deed in trust the said A. W. Thomas excepted from the operation thereof his "homestead estate and the right to a homestead therein."
3. The homestead of the said A. W. Thomas was regularly allotted to him and included the part of lot of land described in paragraph one hereof, which said return and allotment is recorded in the register's office of Beaufort County in Book _____, page _____, and is herein referred to and made a part hereof, and it is admitted that the allotment of homestead was valid and regular in all respects. *Page 456 
4. Under the power of sale contained in the said deed of trust from A. W. Thomas, the said A. Mayo and S. R. Fowle, trustees, on 3 July, 1894, sold the parcel of land described in paragraph one hereof to Jos. W. Bowen, and executed a proper deed therefor in fee.
5. On 25 July, 1894, the said Jos. W. Bowen conveyed the said parcel of land to the coplaintiff, Julia W. Thomas, by proper deed in fee.
6. That on or about 1 September, 1894, the plaintiffs contracted and agreed with the defendant to sell and convey to him by proper deed a good and indefeasible estate in fee simple to the lot of land described in paragraph one hereof, and also another parcel of land adjoining the same and described as follows, viz.: A lot or parcel of land situated in the town of Washington and in that part of said town known as "Bonner's Old Part," and being a part of lot No. 26, beginning at a point on the east side of Market street a distance of one hundred and five feet from the southwest corner of said lot No. 26, at the corner of Main and Market streets, and thence running northwardly along Market Street a (669) distance of six feet; thence eastwardly in a line parallel to Main street a distance of one hundred and five feet; thence southwardly in a line parallel with Market street a distance of six feet, and thence a distance of one hundred and five feet to the point of beginning on Market street. And the defendant agreed to pay therefor the sum of twelve hundred and fifty dollars, which said agreement is in writing and duly executed.
7. That there were no judgments docketed or in force against said A. W. Thomas at the time of the execution by him of the deed of assignment to said Fowle and Mayo. See Exhibit A. That subsequent to the execution and recording thereof, and at the time of the laying off, allotting the homestead of A. W. Thomas in the locus in quo, there were docketed certain judgments against said A. W. Thomas and in favor of certain creditors, which judgments have not been satisfied.
The existence of these judgments, which defendant claims are liens upon said land, is wherein defendant says the title offered to him by plaintiffs is defective.
8. The plaintiffs, A. W. Thomas and Julia W. Thomas, have tendered to the defendant a deed appropriate in form conveying in fee simple both the above-described parcels of land, but the defendant declines to receive the said deed or to pay the purchase money therefor as agreed, upon the ground that the plaintiffs are not seized of an estate in fee simple in the lot of land described in paragraph one hereof. It is admitted that the plaintiff Julia W. Thomas is seized in fee of the second lot of land embraced in the agreement to convey and described in this paragraph. *Page 457 
The question submitted to the court upon this case is as follows: "Are the plaintiffs seized of an estate in fee simple in the lot of land described in paragraph one hereof?" (670)
If this question is answered in the affirmative, then judgment is to be rendered against the said defendant, N. S. Fulford, for the amount claimed, viz., the sum of twelve hundred and fifty dollars, and for costs; provided the plaintiffs shall tender and deliver to the defendant a good and sufficient deed in form conveying an estate in fee simple in both the parcels of land described in paragraph six thereof.
If this question is answered in the negative, then judgment is to be rendered against the plaintiffs, dismissing the action.
His Honor being of the opinion that plaintiffs, A. W. Thomas and Julia W. Thomas, could conjointly execute a good title in fee to the lots, adjudged that they should execute and deliver a deed therefor in fee simple, duly probated and with proper privy examination, and that they should recover from the defendant the sum of $1,250 and costs. From this judgment the defendant appealed.
The homestead provision of the Constitution of 1868 has given rise to many interesting and troublesome question. And it must be admitted that some of our decisions are not in harmony, and the homestead is by no means a settled question. We do not propose in this opinion to give a critical examination to the many cases we have on the homestead, but to treat it mainly as an original question, referring only to a few cases which we think sustain our view or illustrate our argument.
The case presents very nearly every question of the homestead that has come before this Court for its consideration.
It presents these questions: What is a constitutional homestead? When does it commence and how long does it continue? When and how can the homesteader sell his homestead exemption personal (671) in its nature and operation, or is it in rem?
Then, what is this homestead? In some of the early decisions it is treated as an estate and called a determinable fee; but this doctrine has long since been abandoned and we have numerous decisions that hold the homestead is not an estate, but an exemption only. This we think is true. But what is it that operates and how does it operate to exempt the homesteader's land from sale by execution — is it in personam or is it in rem? We admit that our more recent decisions are disposed to *Page 458 
treat it as a personal privilege. This we think is an error and has led to most of the troubles we have had in construing the homestead, and has brought about the great conflict in our decisions.
We are of the opinion that it is not personal, but is in rem; that it is a condition, a quality created by the Constitution which attaches to the land, whereby an estate is exempt from sale. This, it seems to us, is the great question in the case and first to be determined.
Then, what is exempted? Land. What is it exempted from? Execution — fi. fa. It is land the creditor is trying to sell — not the debtor. The homestead provision exempts the debtor from nothing. It is like a warranty attached to the land, and runs with the estate wherever it goes and inures to the benefit of anyone that shall hold the estate, until the homestead shall end.
The next question is, When does this homestead condition attach, and can the homesteader (if a married man) sell the homestead without his wife's joining in the conveyance? And our opinion is that (672) the homestead condition attaches at the moment when the conditions are complied with; that the condition created by the Constitution is always present, and as soon as it finds a resident of the State, the owner and occupier of land, the condition attaches. And the homesteader can no more sever it from the estate than he could sever a warranty that had attached from the estate. A sells to B with warranty. B sells to C without warranty. Still C gets the benefit of A's warranty because it was attached to and ran with the estate. And B could not sell the estate and reserve the warranty. Neither could he sell the estate to C and the warranty to D, for the reason that it was attached to and ran with the estate. So, if we take the definition of a homestead given above — "that it is not an estate, but only an exemption" — and add to it the definition given by that great jurist, Chief Justice Pearson, in Littlejohnv. Egerton, 77 N.C. 384: "A homestead right is a quality annexed to land whereby an estate is exempt from sale under execution for debt" and "is not a personal trust," we have a full and complete definition of a constitutional homestead.
Then it follows, as a general rule, that the homesteader cannot sell the homestead unless the wife joins him in the conveyance. Article X, section 8, of the Constitution provides that any sale he makes of the homestead estate without his wife joining him in the deed of conveyance shall be void. And if, as we have seen, the homestead conditions attach as soon as it finds a resident of the State, the owner and occupier of land, there never is a time when he can sell the homestead estate without his wife joining him in the deed of conveyance. Doubtless there are exceptions to this general rule. But they are the exceptions and not the rule. *Page 459 
We would think, where a homestead had been laid off and located, the husband might sell and convey any land he owned outside of this boundary without his wife's joining him, for the reason (673) that the constitutional protection does not attach to his other land outside of this boundary. There may also be an exception where the marriage took place and the land was acquired before the Constitution of 1868, under the principle in Sutton v. Askew, 66 N.C. 172. And there may be other exceptions that do not occur to us now.
We are aware it has been held otherwise in Hughes v. Hodges,102 N.C. 236, in Fleming v. Graham, 110 N.C. 374, and probably in other cases. In Hughes v. Hodges it is held that the general rule is that the homesteader can convey without the joinder of his wife, and where it is necessary for her to join is the exception. And four conditions are specified in which it is necessary for her to join — all grounded upon the idea that there is no homestead until the homesteader is about to become insolvent. This position, we think, must be incorrect. It is not the condition of the homesteader that creates the homestead condition, but the force of the Constitution attaching to and acting upon the land. The construction we give to section 8, Article X, of the Constitution is in accord with the plain and simple language of that article; while the construction given it in Hughes v.Hodges is, as we think, adding to what is contained in the Constitution. This interpretation of the homestead estate relieves the Court from many troublesome questions, such as to when it is necessary for the wife to join in the conveyance, and as to the duration of the homestead exemption in the hands of a purchaser; that a sale of the homestead estate by the homesteader without the joinder of his wife is void and passes nothing; that if he sells and his wife joins in the conveyance, and there are no encumbrances at the time of the sale, the purchaser gets whatever estate the grantor had, free from encumbrances, but if there are judgment liens on the land at the time of the conveyance by (674) husband and wife, the purchaser takes the estate subject to such liens, but protected from sale under execution upon said judgments to the same extent that the homesteader and his family would have been if they had not sold, because the homestead exemption is a condition that runs with the estate.
But there are other questions involved in this case, Thomas, being embarrassed, though there were no docketed judgments against him, made a mortgage to Fowle and Mayo without his wife joining him, in which he made the following reservations: "Provided that the party of the first part hereby excepts and reserves from the operation of this deed the homestead estate and the right to a homestead therein." Since the *Page 460 
making of the mortgage judgments have been docketed against Thomas, his homestead has been laid off, the mortgagees have sold, and by mesne conveyances from the mortgagees Thomas' wife has become the purchaser. And she and her husband have contracted to sell to the defendant, and he refuses to comply with the terms of the sale, alleging that the plaintiffs cannot make him a good title to the land.
It is admitted by the plaintiffs that if Thomas reserved the estate in the land, the docketed judgments would be a lien, and they could not convey perfect title. But they contend that he did not reserve the estate, but only the homestead exemption. And this being so, there was no estate for the judgment liens to act upon and attach to. And it is further contended that, there being no judgments against Thomas at the date of the mortgage, he had a right to make this mortgage without his wife's joining him in the conveyance. Hughes v. Hodges, supra.
Treating the mortgage for the present as an effective conveyance, (675) it is perfectly manifest to us that he reserved the estate. He says that he "excepts and reserves from the operation of this deed the homestead estate," and what authority have we for saying that he did not? But he further says "and the right to a homestead therein." Why make this last exception and reservation if he had reserved this and nothing more in the first exception and reservation?
But we have shown in a former part of this opinion that he could not sell the estate and reserve the homestead, which is a condition attached to the land and runs with the estate. And, besides the other reasons we have given why he could not convey without his wife joining him in the deed as provided in section 8 of Article X of the Constitution, we now propose to show that he could not do so under the decision of Hughes v. Hodges, supra, as it is contended he could. That case makes four exceptions to the general rule that the husband can convey without his wife's joining in the conveyance. And the third exception is where the husband makes a mortgage reserving the homestead, which has to be laid off before the trust can be foreclosed. So we see that this third exception contained in Hughes v.Hodges is direct authority for holding that the mortgage deed of Thomas to Fowle and Mayo was utterly void and passed no estate.