RACHEL HAGER *et al. v.* A. M. NIXON and wife *et al.*

A widow cannot, under the Constitution and Act of 1868-'69, chap. 137, sec. 10, have a homestead laid off for herself and minor children after the death of her husband when he died without leaving debts.

This was a CONTROVERSY without action, submitted to his Honor, *Logan, J.,* Judge of the Ninth Judicial District, at the last term of LINCOLN Superior Court, under the 315th sec. of the C. C. P.

The following is the statement of the controversy and the decision of the Judge upon it;

1. John Hager died in Lincoln county in September, 1872, where he resided. At his death he was seized in fee of a tract of land in said county, worth about five hundred dollars, and no other real estate.

2. A. J. Morrison administered on his estate on the 2d day of September, 1872. The time for presenting claims has not yet expired, but as far as known there are no outstanding debts against the estate.

3. The inventory of the administrator shows personal property worth about five hundred dollars.

4. John Hager in his lifetime did not apply to have his homestead allotted to him.

5. John Hager left him surviving, Rachel Hager, his widow, one of the plaintiffs, and Ellen Hager, his daughter, aged 13 years, the other plaintiff, and Rachel Nixon, wife of A. M. Nixon, one of the defendants, aged 22 years, and Jane Hager, a daughter, aged 18 years, who is the other defendant.

6. Rachel Hager, the widow, applies to have the tract of land allotted to her as a homestead for the benefit of herself and minor child, Ellen, who lives with her and for the other children if they desire it, and this application is resisted, and her right to the said homestead denied by the

defendants, A. M. Nixon and wife, and Jane Hager, who appears by A. M. Nixon, her guardian. Rachel Hager is the mother of Rachel Nixon and Jane and Ellen Hager, parties to this controversy.

It is agreed that the Judge of this Court shall thereupon hear and determine the case, and render judgment therein, as if an action presenting this point were depending before him.

W. S. BYNUM,
Attorney for plaintiffs.

D. SCHENCK,
Attorney for defendants.

May 1st, 1873.

It is the opinion of the Court that Rachel Hager is entitled to the homestead asked for, and that the same be laid off for her according to law.

G. W. LOGAN,
Judge Superior Court Ninth District.

May 3d, 1873.

From this judgment the defendants prayed an appeal, which was granted.

*D. Schenck*, for the defendants, contended that the policy and object of the Constitution and laws in relation to homesteads applied only to cases of persons indebted, and were never meant for the benefit of those who did not need them. He cited and commented on *Watts* v. *Leggett*, 66 N. C. Rep. 197.

*W. P. Bynum*, for the plaintiffs argued that the homestead was intended for the benefit of the citizen, and that therefore the Constitution and laws relating to it should be construed liberally. If a citizen was indebted to ever so small amount, say $50 or $100, he would be entitled to a homestead, and to make a distinction between so small a sum, and not being indebted at all, is not at all reasonable.

RODMAN, J.   No precise definition of a homestead is given in the Constitution, and it would only mislead us if we should look into dictionaries or the laws of other States and take the definitions there given as fixing the meaning of the word as given in our laws.   We must look to our own legislation alone to ascertain what it is.

It seems that the idea of a homestead which the framers of our Constitution had in mind was ownership and occupancy of land exempted from execution *obtained on any debt* during the life of the owner. (Art. X, sec. 2.)   To this original conception was added a continuance of the exemption during the minority of any one of the owner's children; (sec. 3) and if he died leaving *no* children, but a widow, the exemption continued during her life. (Sec. 5.)   The idea apparently was that the exemption should attach to the property of the owner, or to some part of it, during her lifetime, which implied that the property should be valued and designated, or set apart from his other property during the debtor's lifetime.   We infer this from sec. 3.   " The homestead after the death of *the owner thereof* shall be exempt, &c., during the minority of any one of the children." It is implied that the ancestor had been the owner of the homestead, by which, in this connection, must be meant a part of his property set apart and designated as exempt, and not merely land occupied and owned by him.   So in sec. 5: " If the *owner of a homestead* die leaving a widow, &c., the word must have the same meaning."

The whole design of the Constitution, so far as it can be gathered from Art. X, was to exempt property of a debtor to a certain value from execution for debt.

No trace appears of any intention to enlarge the dower or *post obit* estate of a widow at the expense of the heirs of her husband.   She was not to take the homestead of her husband except in the event of there being *no* children, either minors or adults. (Sec. 5.)

In 1869 (Acts 1868–'69, chap. 137,) the Legislature undertook to carry the provisions of the Constitution into effect, and to prescribe under what circumstances, how, and by whom, the homestead should be valued, designated and set apart for and during the time fixed by the Constitution, to wit: the minority of the youngest child.

It is argued that the Legislature did more than this. For example, by sec. 7, they allowed a homestead to be laid off to any resident of the State, whether he was a debtor under execution or not. And also that by sec. 10, they allowed the widow of any person entitled to a homestead, although it had not been laid off in his lifetime, either upon her separate action, and then successively to the minor children of the deceased owner of land, or else jointly with the minor children to have a homestead laid off to her or them from the land of the deceased, whether he left creditors who might have execution upon the land or not.

It is under this section, and under this interpretation of it that the plaintiff claims in this case.

We will note here that throughout this discussion we omit from consideration the personal property exemption altogether, and nothing said herein is intended to have any application to that, except so far as the reasoning may incidentally and necessarily affect it.

It may also be said incidentally, and not as having any direct bearing on the present case, that the language of sec. 10 is so vague that however we may interpret it in the present case, unless changed by the Legislature, a good many obscure and embarrassing questions will arise upon it. For example, must the widow join with the minor children, or may she or they sue alone without the consent and against the interest of the other? Is the widow entitled to have the homestead laid off to her as her sole property first; and *then* (after her death) may it be laid off to the minor children? If laid off to all jointly, what is the nature of the estate?

Can it be partitioned, and in the event of a disagreement, who is to control and manage the property? We do not now consider, much less undertake to decide, such questions.

The question before us, is, whether under sec. 10, the widow and minor children can jointly or separately (for we omit for the sake of the argument the consideration that in this case one minor child dissents from the claim) require a homestead to be assigned to her or them under the circumstances? The material circumstances are that the intestate owes no debts or none beyond the ability of his personal property to pay; that his land is worth $500, and that he left a widow and three children of whom two are minors, and one only of these joins in the petition.

More generally expressed the question is, can a homestead be laid off for a widow after the death of her husband, he owing no debt?

We will not question that the Legislature had the general power to increase the widow's dower or other estate in her husband's lands after his death, and to give her all his lands (not exceeding $1,000 in value) for her life to the exclusion of an immediate estate in the heirs. It is simply a question of intention.

The subject matter of the Act of 1868–'69, is the homestead as provided for and in a general sense defined by the Constitution. The purpose of a homestead law is to regulate between a debtor and his creditors, and to affect other interests incidentally only, and to the least possible degree consistent with its main purpose.

The present Act does not profess to deal with any other subject but homesteads. To undertake in it the regulation of the respective estates of a widow and the heirs when there were no debts, would be an abrupt and unnatural departure from the subject in hand. We think the Legislature still had in mind the idea of a homestead as property needing exemption, and that sec. 10 applies only where there

are creditors of the deceased owner. It may be laid off as a protection against creditors, but it is valid and available against them only. As between the widow and the heirs, the estate goes under the general laws. It is asked, suppose there be a small debt, can the homestead then be laid off? It can. But if the heirs procure the creditor to release and extinguish the debt, the homestead being no longer necessary, can have no existence. It is possible that the Act under this or any other interpretation may lead to unexpected results. But that is only what happens in the case of all experimental legislation, as that on homesteads confessedly is. Our duty is simply to ascertain the intent and meaning of the Act; if it shall turn out to need amendment, the Legislature can provide the remedy.

Judgment below reversed, and complaint dismissed.

PER CURIAM. Judgment reversed, and suit dismissed.