JOYNER v. SUGG.

(Filed May 5, 1903.)

HOMESTEAD—*Exemptions—Trust Deeds—Husband and Wife—The Constitution, Art. 10, Secs. 2, 3, 5, 8.*

A deed in trust by the husband, in which the wife does not join, reserving the homestead of the grantor therein conveys the entire land contained in the deed of trust, subject only to the determinable exemption in $1,000 worth thereof from the payment of the debts of the grantor during his life.

PETITION to rehear this case, reported in 131 N. C., 324. Petition granted.

*Jarvis & Blow,* for the petitioner.
*Skinner & Whedbee,* in opposition.

WALKER, J. This is a petition to rehear and review the judgment of this court rendered at the last term in the above entitled case. It involves a matter of the greatest importance, as it relates to the ever recurring question of the extent of the homestead right, and requires us to declare and decide what is the nature and characteristics of that creature of the Constitution known as the homestead, and what right in or control or dominion over it the owner has and enjoys under the terms of the instrument by which it was brought into existence.

The facts in regard to this particular case—as we gather them from the record—are those stated by the court in the prevailing opinion delivered at said term, with slight modification, not now perhaps material to be considered in connection with the question to be discussed and decided on the rehearing, and are as follows: "Blaney Joyner in 1893 executed a deed of trust to Allen Warren to secure creditors, in which was included the land in controversy, which was conveyed 'subject to and reserving, however, his (Blaney Joy-

ner's) homestead rights therein as secured by the laws of North Carolina.' After due advertisement according to the terms of the trust, the land was sold 'subject to the reserved homestead right of Blaney Joyner,' and was bought by R. L. Davis, with whom Blaney Joyner had arranged that it should be bought for his benefit, and the deed therefor was made by Allen Warren, trustee, to said Davis, 'subject to the homestead right of Blaney Joyner,' and coupled with a parol trust to convey the same to whomsoever Blaney Joyner might direct, and by direction of Blaney Joyner, said Davis conveyed the land, 'subject to said Blaney Joyner's homestead right,' to his wife, J. A. E. Joyner. Blaney Joyner and his wife united in a mortgage to secure to said Davis the payment of the purchase money, which was subsequently paid off by Mrs. Joyner after the death of her husband, as appears by the testimony of W. G. Lang at page 22 of the record. Blaney Joyner died without issue and the plaintiffs are his heirs at law. J. A. E. Joyner died subsequently in 1901, having devised the land to her nieces, the defendants, who are in possession of the premises."

It was held by this court (*Joyner v. Sugg,* 131 N. C., 324) that there was no parol trust created by Mrs. Joyner and that the parol trust raised by the agreement between R. L. Davis and Blaney Joyner was performed by the execution of the conveyance of Davis to J. A. E. Joyner, as directed by Blaney Joyner, so that the question as to the trust is now out of the case, and we have only to determine whether the deed of trust and the subsequent deed of the trustee to Davis and of Davis to Mrs. Joyner vested in her the title to the land described in the deeds, subject only to the right of Blaney Joyner to have and occupy a part of the land to the value of $1,000, exempt from sale under execution for the time fixed in the Constitution, or whether the deeds conveyed all of said lands except the part subject to the exemption, the said part

being so excepted from the deeds as that no interest whatever therein vested in Mrs. Joyner.  In other words, does the Constitution forbid the sale of the land itself allotted as property which shall be exempt from sale under execution without the joinder of husband and wife in the deed and the privy examination of the wife thereto, or does it merely prohibit any conveyance without such joinder and privy examination, which will transfer or convey this right of exemption, leaving the husband free to convey all other interests he may have in the excepted part to take effect in possession when the exemption has ceased?

We unhesitatingly adopt the latter construction as the one which was clearly contemplated by the framers of the Constitution, which has met with legislative sanction, as we shall hereinafter show, and which has been uniformly adopted by this court until this case was decided at the last term.

It is provided in Article X of the Constitution as follows:

"Sec. 2.  Every homestead and the dwellings and buildings used therewith, not exceding in value one thousand dollars, to be selected by the owner thereof, or in lieu thereof at the option of the owner, any lot in a city, town or village, with the dwellings and buildings used thereon, owned and occupied by any resident of this State and not exceeding the value of one thousand dollars, shall be exempt from sale under execution or other final process obtained on any debt.  But no property shall be exempt from sale for taxes, or for payment of obligations contracted for the purchase of said premises.

"Sec. 3.  The homestead, after the death of the owner thereof, shall be exempt from the payment of any debt during the minority of his children or any one of them.

"Sec. 5.  If the owner of a homestead die, leaving a widow but no children, the same shall be exempt from the debts of her husband, and the rents and profits thereof shall

enure to her benefit during her widowhood, unless she be the owner of a homestead in her own right.

· "Sec. 8.   Nothing contained in the foregoing sections of this Article shall operate to prevent the owner of a homestead from disposing of the same by deed; but no deed made by the owner of a homestead shall be valid without the voluntary signature and assent of his wife, signified on her private examination according to law."

It is perfectly obvious from a bare perusal of these sections that the sole object of the framers of the Constitution was, not to set apart property which should not be sold by the owner, but to exempt the property from execution and thereby put it beyond the reach of creditors for the time specified. Their only care and solicitude were to protect him who had been or might be overtaken by misfortune, and to save his family from utter impoverishment and destitution.   They did not intend to tie the hands of the head of the family so that he could not dispose of his property, as they well knew that the *jus disponendi* would always be one of the most valuable qualities of the estate, but it was their purpose to bind the hands of the creditor so that he could not lay them upon the exempted property of the debtor in the time of his adversity and to suspend his right to proceed against that property for the satisfaction of his claim during the period of exemption.   This constituted their chief and indeed their only aim and purpose, and it was never intended that this humane and beneficent provision of the organic law should be so interpreted as to take away from the owner of the right of exemption any part of his almost equally valuable right of alienation.

The framers of the Constitution meant exactly what they said and ordained, that a certain part of the real property of the debtor should be set apart for his use and occupation, where he might dwell with his family in peace and content-

ment without any creditors to molest or make him afraid, so long as he might live, and to extend the benefit of the exemption to the wife during her life, if there should be no children of the marriage, and if there were children, then during the minority of the children or any one of them. The leading idea, if not the only one, was to create an exemption and not an estate, and an exemption too for a limited period, leaving the estate, which the debtor already had in the land, unimpaired. We have said that no new estate was created, for we are told that an estate is the interest which the tenant has in his land, and no interest has been created here, but merely a right of exemption or a privilege of protection against creditors, leaving the debtor at full liberty to deal with his estate at his own free will, provided he does not alien this right of exemption or interfere with its enjoyment without the consent of his wife to be signified in the manner prescribed.

We find therefore that as regards the property allotted for the purpose of exemption, the debtor acquires no new right, interest or estate in it or to it, as he is supposed already to have the entire estate, but something collateral to it; and if this something, which we may call a right of exemption or a determinable right of exemption or a quality annexed to the land whereby it is exempted, is preserved to him and his family intact, he may convey or transfer his estate or interest in the land, as he could do if this right did not exist, without infringing upon any provision of the Constitution.

The land is his and he holds it with all the rights and incidents of ownership, among which stands pre-eminent the right of alienation as essential to his power and dominion over it, and the law makers could not have intended to put any restriction upon this right, for it would be against the policy of the law to do so, except in so far, and only in so far, as it might be necessary to protect the owner against his credi-

tors. If he does not interfere with the right of exemption, why may he not do with his own as he pleases in all other respects, and why may he not sell and convey without the joinder of his wife all of his interest in that which it is not necessary for him to keep in order to secure to himself and his family the full enjoyment of this right of exemption? When it is admitted to be a mere determinable right of exemption, as we understand it is in the opinion of this court delivered at the last term, the result we have reached, and not the one stated by the court in that opinion, is, we think, the natural and inevitable conclusion that follows from the admission. The true idea is well expressed by the court in *Hughes v. Hodges,* 102 N. C., 236: "The *jus disponendi* is a vested right and protected by the Constitution and is restricted only by provisions for dower and homestead, which restrictions must be so construed as to carry out the kindly purpose for which they were created, with no more restriction of the power of alienation than is necessary to make them effectual."

We have thus far stood upon "the reason of the thing" and the letter and spirit of the Constitution. But if there can be any doubt or uncertainty in regard to this matter, why may we not call to our aid the interpretation placed, impliedly, at least, upon this constitutional provision by the Legislature? It was provided by the Act of 1869-'70, Ch. 121, Sec. 1 (Battle's Rev., Ch. 55, Sec. 26), "That it should not be lawful to levy upon or sell under execution for any debt the "reversionary interest" in any lands included in a homestead until after the termination of the homestead interest therein." While the words "reversionary interest" are here used to describe a right which the owner has in the land subject to the determinable exemption, and were inappropriate in a technical sense for that purpose, because the homestead is not an estate and the interest or estate of the

owner in the land is in no way divided up or changed, yet it appears clearly from the Act that the Legislature thought that under the Constitution the owner had a salable interest in the exempted land distinct from the right of exemption. If this is not so, and the land itself or the part of it allotted for the purpose of exemption was in the mind of the Legislature as being that thing which constituted the "homestead," why should it speak of a "reversionary interest," which implies that there is a preceding particular estate or interest, and undertake to protect that "reversionary interest" from sale under final process? It is utterly impossible to conceive that the Legislature, in staying the sheriff's hand until the right of exemption has expired, could have had any other idea than that the Constitution created only a right of exemption which left the land in the hands of the debtor exposed to sale, subject only to that privilege or right of exemption, and the exempted land which was thus liable to be sold was miscalled a "reversion." It expressed the right idea with the wrong word, but nevertheless it placed the unmistakable interpretation upon the Constitution which we have adopted. It would have been idle to protect from sale under execution something that did not exist and could not be sold; and it will not be imputed to the Legislature that it intended to do a vain thing. This court, speaking by Ashe, J., in *Adrian v. Shaw,* 82 N. C., 474, says: "In this State it is held that the homestead right is a quality annexed to land whereby the estate is exempted from sale under execution for debt, and it has its force and vigor in and by the Constitution." If it was intended by the framers of the Constitution that all of the interest of the owner in the homestead land should be exempted from sale, it was not necessary to pass the Act of 1869-'70, as the Constitution sufficiently protected it."

It was only upon the supposition that there was an interest in the exempted land which was left exposed to sale that made

it necessary to pass the said Act. That statute was remedial in its nature. The old law was the Constitution, which declared that a certain part of the land should be set apart and to it should be attached a right or privilege of exemption only, thereby rendering it liable to sale subject to that exemption. The mischief was that sales under execution had been and were then being made, which were recognized as valid by the courts and which were considered as injurious to the homesteader, and to remedy this evil the statute was enacted. It was not declaratory, because if the framers of the Constitution intended that "the estate in the land in its entirety should be set apart and exempted", this as we have said was all sufficient without a statute to forbid its sale under execution, as we know that the Constitution does that in express and positive terms.

But let us examine the question in the light of the decisions of this court.

The case of *Jenkins v. Bobbitt,* 77 N. C., 385, is directly in point and has never been overruled or questioned. It is well to reproduce a part of what is said in that case by Pearson, C. J., for the court: "We think it clear that this section refers exclusively to the disposition of the homestead estate by the owner thereof, and has no reference whatever to any conveyance he may make of his estate in reversion. By the proper construction, this section should read, 'But no deed *purporting to dispose of the homestead* made by the owner of a homestead shall be valid without the voluntary signature and assent of his wife, signified on her private examination according to law'. Read in this way, there is sense to it; but to make it apply to a disposition of the reversion as well as a disposition of the homestead estate, incurs the censure of the rule *haeret in litera, haeret in cortice.* . . . . . As the owner of an estate in reversion after a homestead estate had a right to make a voluntary alienation, it follows that his

creditors had a right to have it sold under execution. Hence the necessity for the statute, Bat. Rev., Ch. 55, Sec. 26. If the wife had the power to put a veto upon the sale of the reversion by refusing to give her assent, that act would not have been needed. But such a power on the part of the wife, to object either to the voluntary disposition of the reversion by the husband, or to an involuntary disposition of it by execution, was not then suggested by any one. . . . . A sale by the owner of the homestead of his estate in reversion stands as at common law, and the owner has full power to sell it, or to mortgage it if he desires to raise money on the credit of it. It is his property; why should he not have a right to dispose of it? The right seems to be conceded by his Honor, unless it be restrained by the section of the Constitution upon which we have commented."

The principle of that decision has as we think, been applied by this court in the following cases: *Poe v. Hardie,* 65 N. C., 447; *Hager v. Nixon,* 69 N. C., 108; *Barrett v. Richardson,* 76 N. C., 429; *Littlejohn v. Egerton,* 77 N. C., 379; *Gheen v. Summey,* 80 N. C., 187; *Murphy v. McNeill,* 82 N. C., 221; *Adrian v. Shaw,* 82 N. C., 474; *Wyche v. Wyche,* 85 N. C., 96; *Grant v. Edwards,* 86 N. C., 513; *Keener v. Goodson,* 89 N. C., 273; *Lowdermilk v. Corpening,* 92 N. C., 333; *Rogers v. Kimsey,* 101 N. C., 559; *Jones v. Brittain,* 102 N. C., 166, 4 L. R. A., 178; *Hughes v. Hodges,* 102 N. C., 236; *Long v. Walker,* 105 N. C., 90; *Fleming v. Graham,* 110 N. C., 374; *Bank v. Whitaker,* 110 N. C., 345; *Davis v. Smith,* 113 N. C., 94; *Stern v. Lee,* 115 N. C., 426, 26 L. R. A., 814; *Thomas v. Fulford,* 117 N. C., 667; *Bevan v. Ellis,* 121 N. C., 224; *Williams v. Scott,* 122 N. C., 545.

These and many other cases either directly or indirectly recognize the right of the owner of the homestead-land to sell the same subject to the right of exemption and thereby

to convey what was once called, in default of a better word, the "reversion"; and in several cases it has been said by this court that Article X, Sec. 8 of the Constitution by which it is required that there shall be the signature and assent and privy examination of the wife to any valid deed conveying the homestead, applies only when the exempted land has been actually allotted and set apart to the homesteader. *Mayo v. Cotten,* 69 N. C., 289; *Hughes v. Hodges,* 102 N. C., 247.

In *Bank v. Green,* 78 N. C., 252, this court by Bynum, J., says: "There is some misconception as to the nature of the homestead law. The homestead is not the creation of any new estate, vesting in the owner new rights of property. His dominion over it and power of disposition are precisely the same after as before the assignment of the homestead. The law is aimed at the creditor only, and it is upon him that all of the restrictions are imposed; and the extent of these restrictions is the measure of the privileges secured to the debtor."

"The homestead has been called a determinable fee, but, as we have seen that no new estate has been conferred upon the owner and no limitation upon his old estate imposed, it is obvious that it would be more correct to say that there is conferred upon him a determinable exemption from the payment of his debts in respect to the particular property allotted to him." *Ibid.*

In *Hinsdale v. Williams,* 75 N. C., 430, Pearson, C. J., for the court, says: "But a sale by the owner of a homestead of his estate in reversion stands as at common law, and the owner has full power to sell it."

In *Ladd v. Byrd,* 113 N. C., 466, the court states the principle as follows: "Prior to the passage of the Act of 1870, when the reversionary interest could still be sold under execution, the judgment creditor might at his option recognize the claim of the debtor to a homestead by exposing to sale

only such reversionary interest without affecting the validity of the sale, or in any way impairing the right of the purchaser to possession of the land on the expiration of the prescribed period of exemption. *Long v. Walker,* 105 N. C., 90; *Wyche v. Wyche,* 85 N. C., 96; *Barrett v. Richardson,* 76 N. C., 423. When made expressly 'subject to the homestead', it was held that the sale was valid and 'passed the reversionary interest only'."

In *Vanstory v. Thornton,* 112 N. C., 116; 34 Am. St. Rep., 483, the court distinctly recognized and applied the principle that the homestead is not a new estate but merely a determinable exemption from the payment of debts, and that the land might be conveyed subject to this right of exemption. "The reversionary interest in the homestead land," says the court, "may be owned by one person, while the homestead interest or estate is held by another"—citing several cases. And again: "The exemptionist may sell the land on which the benefit rests, subject to the judgment, but also protected for the time being by the suspension of the lien." While there was a dissenting opinion in that case, it was upon a question not presented in this case and as to the principle here involved the justices were unanimous.

In *Williams v. Scott,* 122 N. C., 545, the court says: "A sale of the reversionary interest in land by an assignee in bankruptcy, in which a homestead has been allotted, is fully recognized in our courts. *Windley v. Tankard,* 88 N. C., 223; *Murray v. Hazell,* 99 N. C., 168. The laws of North Carolina prohibit a sheriff from selling the reversionary interest in homestead lands under execution, but they do not prevent the homesteader himself from conveying it. *Jenkins v. Bobbitt,* 77 N. C., 385."

In *Thomas v. Fulford,* 117 N. C., 667, there was a wide divergence of views developed, but no principle theretofore established by the court in regard to the right of exemption

was overruled or even modified. There was a concurrence in opinion of three of the justices to the effect that a valid sale could be made by the husband of the land allotted as a homestead without the joinder of his wife, subject to the right of exemption, though it was decided that, upon the special facts of that case, a good title could not be made; this resulted from the opinion of Clark, J., that the right to a homestead was a mere "stay of execution", which is personal to the owner of the land and also inalienable. In other respects he concurred with Montgomery and Avery, JJ., and had it not been for his view of the law in the respect indicated, which does not affect the matter under consideration in this case, the judgment in that case would have been the reverse of what it was. Viewed in this light, the decision is a direct authority in favor of the defendant's contention in the case at bar.

In *Hughes v. Hodges,* 102 N. C., 247, it is said: "Neither is it material that the wife of the defendant did not by deed assent to his receiving a homestead in the Swamp Place. Section 8, Article X, of the Constitution *applies only to a conveyance of the homestead after it is laid off." Mayo v. Cotten,* 69 N. C., 294. The court in *Hughes v. Hughes, supra,* clearly recognizes the right of the owner of the land to convey it subject to the right of exemption without the joinder of his wife (page 245).

It is not necessary to hold that there is no reversionary interest or nothing substantially equivalent to it for the debtor to sell, as his right of exemption can be fully protected and preserved without such a holding.

In *Scott v. Lane,* 109 N. C., 154, it appeared that at the time two mortgages on land, which was of less value than $1,000.00, were made, the mortgagor was married, that he acquired the land in 1869, that he and his wife lived upon the land and they had no children, and that he owed no debts

except those mentioned in the mortgages. The mortgages were foreclosed and the purchaser sued the mortgagor for possession. It was held that the purchaser acquired a good title as against the defendant, subject only to the wife's contingent right of dower, although she had not joined in the mortgages, and that he was entitled therefore to recover the land. The case is directly in point, and it is impossible to distinguish it from our case.

The case of *Markham v. Hicks,* 90 N. C., 204, was relied on as an authority sustaining the conclusion of the court at the last term, but the Chief Justice did not think that it was in point or at least not sufficient for that purpose. In referring to that case he said: "While the court recognizes that the homestead is not an estate, it seems to me that it fails to recognize the results that follow from the changes in its opinion." What is stated in *Markham v. Hicks, supra,* in reference to the homestead is utterly inconsistent we think with the decision in *Murphy v. McNeill,* 82 N. C., 221, and was directly repudiated by the court in *Ladd v. Byrd,* 113 N. C., 468. See also in the same connection the strong language of the court in *Jones v. Brittain,* 102 N. C., 183, 4 L. R. A., 178, citing *Jenkins v. Bobbitt,* 77 N. C., 385 and *Littlejohn v. Egerton,* 77 N. C., 379. In that case the court takes a view of the Act of 1870, forbidding the sale of "reversionary interests", differing widely from that expressed by Smith, C. J., in *Markham v. Hicks, supra.*

The argument that if the owner of the land is allowed to sell subject to the right of exemption, the property would not bring much and would be bought only by speculators and result in a sacrifice to the homesteader, could apply, if at all, only to forced sales made under execution or other final process, and not to voluntary sales; for in the latter case, the owner can sell for his own price or refuse to sell at all. He has the power to make his own terms. Therefore, what is

stated in the opinion of the court at the last term in regard to such sales can have no application to this case. When the argument was used by Dick, J., in *Poe v. Hardie*, 65 N. C., 447, and by Reade, J., in *Hinsdale v. Williams*, 75 N. C., 430, they were speaking with reference to the Act of 1870 and referring only to forced sales.

In *Bank v. Green*, 78 N. C., 252, Bynum J., says: "The court should not listen to an argument based upon advantage to the debtor or be influenced by considerations of benefit to him, but should construe the law as it is written. The courts cannot by judicial legislation even do so bold a thing as to confer new rights and exemptions in the face of plain legislation by the law making power. . . . . Such an argument should not be addressed to a court which cannot make, but only construe and administer the law as it is written. If worthy of consideration, it should be directed to the legislature as a reason for changing the law."

We cannot understand why a conveyance of land subject to the owner's right of exemption should not be permitted to have full force and effect and to convey all the interest he has in it, subject only to his right to use and enjoy it during the period of the exemption. This is all that the Constitution secures to him, and every principle of law and public policy requires that his right of alienation should be as little hampered as possible.

But we have said and we now repeat that the prohibition of Sec. 8, Article X, of the Constitution, against the conveyance of the husband without the voluntary signature and assent of the wife, to be signified by her privy examination, was not intended to become effective until the homestead is actually allotted to the owner of the land. It is provided by that section that no owner of a homestead shall convey it without the assent of his wife and this necessarily implies that there has been an actual allotment, as no one can be said to be the owner

of that which does not exist. The *right* to the homestead always exists and is guaranteed by the Constitution, but the homestead itself cannot come into existence until it has been "selected by the owner" of the land and actually allotted and thereby identified as his homestead. *Mayo v. Cotten,* and *Hughes v. Hodges, supra.*

This very question was involved in *Hager v. Nixon,* 69 N. C., 108, and the meaning of the words of the Constitution "owner of a homestead" as used in the several sections above quoted, was clearly defined. In that case the husband died without owing any debts and without having had any homestead set apart to him. His wife and minor children applied for the allotment of a homestead and the court decided that Section 5, by which it is provided that "if the owner of a homestead die leaving a widow" she shall have the benefit of the homestead during her widowhood, meant that the homestead must have been allotted to the husband and he must in that way have become the "owner of a homestead" before she could have the benefit of it. "It is implied," says the court, "that the ancestor had been the owner of the homestead, by which, in this connection, must be meant a part of his property set apart and designated as exempt, and not merely land occupied and owned by him." *Ibid,* p. 110.

The words "owner of a homestead," are used in Section 8, by which the sale of the homestead without the assent of the wife is forbidden, and as the court has said in *Hager v. Nixon, supra,* that the same words in all of the sections must of necessity receive the same construction, the restraint of alienation imposed by section 8 can apply only to a homestead which has been actually allotted. See also *Bruce v. Strickland,* 81 N. C., 267. The prohibition of that section cannot, therefore affect this case, as there had been no allotment of the homestead when Blaney Joyner executed the deed of trust to Allen Warren.

It follows from what we have stated that J. A. E. Joyner acquired a good title to the land in question by the sale and deed to her, subject to Blaney Joyner's homestead right and his determinable right to use and occupy the same exempt from the claims of his creditors, and, this right having expired at his death, the "homestead" right of J. A. E. Joyner merged in the fee simple she acquired by the deed and gave her a good and indefeasible title to the land, which she devised to the defendants. They are, therefore, entitled to the same as against the plaintiffs.

The former judgment of this court is reversed and the judgment of the lower court is affirmed.

Petition Allowed.

Connor, J., having been of counsel did not sit on the hearing of this case.

Douglas, J., dissenting:—Still adhering to the views contained in the opinion of the court as delivered by me at its last term, I am compelled to dissent from the present opinion of the court. Here my dissent would end if the present opinion simply expressed its present views, but as it is in greater part a critical review of the former opinion, I deem it proper to say something further. The opinion of the court speaks of the construction "which has been uniformly adopted by this court until this case was decided at the last term." This alleged uniformity of construction I have been utterly unable to discover. It may exist somewhere, but if so, in a state too intangible for my mental grasp. Perhaps it shares the etherial existence of that quality of exemption which is said to be capable of existing independently of the substance which it qualifies. The case of *Thomas v. Fulford,* 117 N. C., 667, in which a distinguished member of the Bar wittily said that there were five dissenting opinions, may be cited as an example of uniformity.

Joyner *v.* Sugg.

The court again says that the framers of the Constitution "never intended that this humane and beneficent provision of the organic law should be so interpreted and misunderstood." Perhaps not. My only way of knowing their thoughts is from their written words.

In the construction of the constitutional provisions creating the homestead, there are two different views, either of which might reasonably be followed; but they are antagonistic. If one is right, the other must be wrong; and it seems to me that the effort to combine these inconsistent principles is the real cause of the confusion that has arisen in the construction of the homestead, and is the vital error in the present opinion of the court. The homestead must be either a mere quality annexed to land or a particular estate carved out of the fee. The very definition of the one excludes the other. A quality in itself has no independent existence, but must remain annexed to the subject which it qualifies. The *qualities* of a horse are generally considered as including strength, speed, indurance, gentleness and intelligence. The owner cannot sell the horse and still keep these qualities for himself. The qualities must go with the horse or cease to exist. On the contrary, no one would include the mane and tail of a horse among his qualities. They are *parts* of the horse and can be cut off and separated from the horse. So, if the homestead is a mere quality annexed to land, it must remain with the land; but if it is a particular estate carved out of the fee, it may exist and be conveyed independently of the reversion. We adopted the former view as being more logical, in view of the repeated decisions of this court; but I readily admit that the latter is not unreasonable, provided it is not confused with a lot of inconsistent qualities.

The logical result of the present opinion of the court is to turn the homestead into an estate or interest in land. Its parts are (1) a particular estate for life to the homesteader,

(2) a remainder to his children until they have become 21 years of age, (3) a contingent remainder to his widow during her widowhood unless she has a homestead of her own, and (4) the ultimate fee or reversion, which may be retained or conveyed by the homesteader. This idea seems to have been running through the minds of the court in one form or another for many years from their frequent use of the terms "homestead estate" and "reversion." ·

The court principally relies upon the case of *Jenkins v. Bobbitt,* 77 N. C., 385, which it says "is directly in point and has never been overruled or questioned." Then follows a long extract from that opinion in which occur the following paragraphs: "As the owner of an *estate in reversion* after a *homestead estate* had a right to make a voluntary alienation, it follows that his creditors had a right to have it sold under execution." And again: "A sale by the owner of the homestead of his *estate* in reversion stands as at common law." This is a distinct recognition of two different estates carved out of the same fee.

This court in its present opinion uses the following language: "If this is not so, and the land itself or a part of it allotted for the purpose of exemption was in the mind of the legislature as being that thing which constitutes the 'homestead', why should it speak of a 'reversionary interest', which implies that there is a preceding *estate* or interest."

It may be asked why, if I am now willing to call it an *estate,* I did not so call it in writing the former opinion of the court? One sufficient reason was that this court, while frequently using the words "estate" and "reversion" had repeatedly declared in unequivocal terms that the homestead was merely a *quality* of exemption attached to land, which is utterly inconsistent with the idea of an estate. Now that this court has virtually turned it into an estate by giving it

all the elements that constitute an estate, I think it should be called by its proper name.

Although feeling compelled to dissent from the opinion of the court, it is proper to say that I shall offer no further opposition to the adoption of the rule. It cannot be said that it is in violation of any of the constitutional or inherent rights of the citizen; and as the personnel of this court insures the permanency of this opinion for many years to come, I shall not further attempt to weaken what I cannot change. Where no moral question is involved, the mere consistency of individual opinion bears no importance compared to the necessity of establishing settled rules of property.