### In re PARAMORE & RICKS.

(District Court, E. D. North Carolina.   June 26, 1907.)

BANKRUPTCY—HOMESTEAD EXEMPTION—MANNER OF ALLOTMENT.

Where all the land of a bankrupt was incumbered by mortgages under which the mortgagees had the right to sell the same, including the homestead estate of the bankrupt, the court of bankruptcy may, instead of allotting the homestead from the land, sell the same and make the allotment out of the proceeds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 675.]

In Bankruptcy.   On review of decision of referee.

Moore & Long, for bankrupts.
Skinner & Whedbee and F. G. James, for creditors.

PURNELL, District Judge.   Paramore & Ricks were adjudged bankrupts on petition filed January 14, 1907, and the cause referred. Bankrupts filed a schedule as required.   In such schedule so filed, it was shown both H. A. Paramore and J. A. Ricks were seised and possessed of real estate and personal property, in which both claimed a homestead and personal property exemption.   A trustee was appointed, accepted the trust, and gave bond, and the bankrupts each demanded of said trustee that he lay off and assign to them their homestead.   Thereafter bankrupts prayed the referee that their homestead and exemptions be assigned to them.   The real estate was all mortgaged, the Taft land for $6,600, the Sam Smith land for $1,550, and the house and lot

for $1,070, total $9,220; and sold for $14,770, as follows: Taft land, $12,000; Sam Smith land, $1,570; and the house and lot, $1,200. In addition to the three mortgages before mentioned, there was a mortgage called in the record Campbell's mortgage for $12,000, making a total mortgage indebtedness of $21,000.

It is stated in the record:

"The referee, being of opinion that, if the bankrupts were entitled to homestead in excess over $9,220, it would accrue to the Campbell mortgage, refuses the prayer [of the bankrupt] to instruct the trustee to allot the homestead to the bankrupts, confirmed the sales, and instructed the trustee to hold the sum of $2,000 in lieu of homestead to be applied to the Campbell mortgage or not as the court may hereafter decree, and the excess over the $2,000, and the mortgages, $9,220, would be applied to the debts of the unsecured creditors."

The referee reports as a fact "that the mortgage creditors other than N. W. Campbell came into the court voluntarily, and asked that their mortgages herein be administered through and by the court of bankruptcy." From the ruling of the referee in confirming said sales without the allotment to them of a homestead by metes and bounds the bankrupts appealed.

The creditor holding a lien or mortgage need not prove his claim. Loveland, Bankr. 744; In re Goldsmith (D. C.) 118 Fed. 763; In re Oconee Milling Co., 109 Fed. 866, 48 C. C. A. 703. The mortgage creditors seem to have elected to rely on their security, and have it administered by and through the court of bankruptcy. In re Eagles (D. C.) 99 Fed. 695. This they had a right to do. A sale if attempted to be made by any other court might have been enjoined, as an interference with property in the custody of the court of bankruptcy. In re Utt, 105 Fed. 754, 45 C. C. A. 32; In re Matthews (D. C.) 109 Fed. 603; Loveland, Bankr. 746, note. It is stated in the record as to the mortgages, except the Campbell mortgage, "there is no dispute. All parties admit their validity and the amounts due thereon." As to the Campbell mortgage, it appears that there is to be a contest on the ground or allegation that it was given within four months of the adjudication, November 7, 1906, to secure Campbell as indorser and surety on pre-existing debts; hence a preference. But we are not dealing with this question now; "sufficient unto the day is the evil thereof." That the other mortgages are valid is admitted. Attempts to have property sold and the exemption allotted in cash are not unknown, but of frequent occurrence. Now, we have the reverse of this proposition, a debtor asking that his homestead be allotted to him in kind. Ordinarily this he would be entitled to under section 2, art. 10, of the Constitution of North Carolina, which provides:

"Every homestead, and the dwellings and buildings used therewith, not exceeding in value one thousand dollars, to be selected by the owner thereof, or in lieu thereof, at the option of the owner, any lot in a city, town or village, with the dwelling and buildings used thereon, owned and occupied by any resident of this state, and not exceeding the value of one thousand dollars, shall be exempt from sale under execution, or other final process obtained on any debt. But no property shall be exempt from sale for taxes, or for payment of obligations contracted for the purchase of said premises."

156 F.—14

As said by Justice Walker in delivering the able opinion of the Supreme Court of North Carolina in Joyner v. Sugg, 132 N. C. 580, 44 S. E. 122:

"This article of the Constitution creates no new estate. It only exempts from sale for debt property for the benefit of the debtor and his family. The framers of the Constitution mean exactly what they said, and ordained that a certain part of the real property of the debtor should be set apart for his use and occupation, where he might dwell with his family in peace and contentment without any creditors to molest or make him afraid, so long as he might live, and to extend the benefit of the exemption to the wife during her life, etc. * * * The leading idea, if not the only one, was to create an exemption, and not an estate, and an exemption, too, for a limited period, leaving the estate, which the debtor already had in the land, unimpaired."

The homestead may be sold or mortgaged.

The bankrupts demanded their homestead, but it does not appear which tract—there are three—they occupied, which, as said by Chief Justice Clark, in Thomas v. Fulford, 117 N. C. 681, 28 S. E. 635, is as necessary as that they should own the land. Did they own the land? They, each of them, had conveyed all their homestead interest in the land to secure debts, and held only an equity of redemption, although it was said by Chief Justice Pearson of the Supreme Court of North Carolina, in one case, this was a mere incumbrance, it was an appropriation of the property to the payment of the particular debt, and, upon default, became more than a mere incumbrance, and the bankrupts do not now propose to redeem. The mortgagees would have had the right to sell and convey the title in fee discharged of any exemption. It is not proposed or intended to deprive the bankrupts of their $1,000, real estate exemption, but the trustee has been ordered to hold a sufficient sum to pay them this amount in cash. Unless bankrupts expect by some means to get more, what can be the objection? The fund remains real estate in contemplation of law. The claims being submitted to the bankrupt court by the mortgagees, the powers under the mortgage, delegated to the officer of the court, the trustee in bankruptcy, the court can order him to sell, which in the case here he has done. There is no allegation the sale was not conducted in a manner altogether fair and proper, nor that the price bid was not a fair price, nor that any other injustice or wrong has been done the bankrupts, except that they are deprived of their homestead exemption which they had conveyed in having it laid off and allotted by metes and bounds in land. For the reasons stated, the decision of the referee is in all respects affirmed.

The counsel for creditors did not appear on the day set for hearing them or favor or serve the court with a brief, as did the counsel for bankrupts afterwards. The authorities filed are mostly under the act of 1867, in which it will be noted the provisions as to exemptions are essentially different from the act of 1898, the present act, which adopts the state laws on this subject. In re Richardson, 104 Fed. 873, 44 C. C. A. 235.