This action was brought to compel the specific performance of a contract to convey land, and was heard below upon a demurrer to the complaint, which alleged: "That on 15 October, 1910, the defendant, for a valuable consideration, contracted and agreed in writing with the plaintiff to make, execute, and deliver to the plaintiff, his heirs and assigns, a good and sufficient deed of conveyance to the tract of land described in the complaint, with convenants of warranty, upon the payment to the defendant of the sum of $1,400, the purchase price agreed upon, within ninety days from the date of the contract; that the contract was duly recorded, and within the ninety days fixed in the contract the plaintiff notified the defendant that he elected to take and purchase *Page 286 
the land in accordance with the terms of the contract, and would tender the $1,400 within the ninety days, and that he did actually tender said sum within the ninety days and demand that the defendant (354) make, execute, and deliver a deed in accordance with the terms of the contract, but that the defendant neglected, failed and refused to execute and deliver the deed; and that the plaintiff is still ready, able, and willing to comply with the terms of the contract and pay the purchase money, upon the execution and delivery of the deed. That after the execution of said contract the plaintiff actually paid or assumed the payment of $133.65 for the benefit of the defendant, which sum, it was agreed by the defendant, should be applied, pro tanto, to the purchase price of the lands, under the contract." It was further alleged in the complaint, that at the time of the tender of the purchase money and the demand that the defendant execute and deliver the deed, there were mortgages executed by the defendant and his wife to certain parties named in the complaint and duly recorded in Moore County, which were and are liens on the land, and also a judgment docketed against the defendant, which was also a lien on said land, in favor of Mrs. S.D. Cole, the plaintiff in the judgment, and against the defendant for the sum of $100, with interest and costs. The case on appeal states: "The court finds as a fact that the judgment referred to in the complaint was docketed on 6 May, 1910."
The defendant demurred upon the following ground: "That a cause of action is not alleged in the complaint, in that it appears upon the face of the complaint that the defendant is, and was at the time of the execution of the alleged contract referred to in the complaint, a married man, and that defendant's wife did not join in the execution of said alleged contract, and at the time of the execution of said alleged contract there was a docketed judgment as well as recorded mortgages, both liens thereon, and that execution could have been issued upon said docketed judgment, and the alleged contract is, therefore, void and inoperative."
It was admitted upon the argument of the demurrer that the defendant was, at the time of the execution of the contract, and still is, a married man. That admission also appears upon the face of the complaint.
(355) At the hearing, and upon consideration of the demurrer, which was ore tenus, the court sustained the same and dismissed the action of the plaintiff, and he appealed.
After stating the case: The defendant demurred to the complaint upon the ground that it appeared therefrom that the plaintiff *Page 287 
was a married man at the time the contract was made, that his wife is living, and that at said time there was a judgment against him which was duly docketed in the Superior Court and constituted a lien on his real estate, and that as execution could have been issued on the judgment at any time after it was docketed, the contract was void, for the reason that it was an executory agreement to convey his land, and this could not be done, as he was entitled to a homestead and his wife had not joined in the execution of the contract with privy examination, relying upon the provision of the Constitution (Art. X, Sec. 8) forbidding any disposition of the homestead, except by the deed of the homesteader and "the voluntary signature and assent of his wife [thereto, which shall be] signified on her private examination, according to law."
It was said by Justice Avery in Hughes v. Hodges, 102 N.C. 237: "As between the creditor having a lien on the one side, and the debtor and his family on the other, the Constitution does create a right to a home for the benefit of the debtor's family in his lands — a home that may never be marked out by metes and bounds. The debts may be discharged before the homestead is allotted, and then the inchoate right, as applied to the debtor's land, no longer exists. But when the creditor reduces his claim to judgment, the law places him and the debtor at arm's length and frustrates every effort of either to evade the section of the Constitution that gives the wife the veto power, by requiring an allotment of the homestead as antecedent to any sale, and her assent, with privy examination, before the improvident husband can dispose of it; so, if the debtor sell to defraud his creditor, when the latter moves in the court to set aside his deed and subject the land to his claim, the Constitution gives first the right to an undefined homestead, and the law, made in pursuance of the Constitution, ascertains (356) its bounds as soon as he seeks to sell." He further says: "Until the owner contracts debts, there can be no undefined homestead right attaching to his land, and, unless his homestead has already been allotted, section 8, Article X of the Constitution, does not restrict his power to convey. If, however, the homestead has once been laid off at the instance of creditors, though the debts may be discharged, the restriction remains, and renders the joinder of the wife essential to a valid conveyance of it. The definition given in Adrian v. Shaw must be considered as modified and restricted in its application so as to conform to the views we have expressed in this opinion."
In the defendant's appeal in Hughes v. Hodges, at p. 262, Justice Avery, for the Court, thus sums up the law: "The presumption of law is in favor of the validity of this and every other deed executed in due form. If the defendant seeks to have it declared void, because it was made in disregard of the requirements of section 8, Article X of the *Page 288 
Constitution, the burden is upon him to show that the homestead right attached to the land and vitiated the conveyance, for the want of the joinder of the wife, with privy examination, for one of the three following reasons: (1) That a homestead had been allotted to him in the land described in the mortgage deed, either on his own petition or by an officer in accordance with law. (2) That there was an unsatisfied judgment or judgments that constituted a lien upon the land, when conveyed, and upon which execution might still issue, and make it necessary to have his homestead allotted, or a mortgage reserving an undefined homestead, and constituting a lien on the land that could not be foreclosed without allotting a homestead to the mortgagor in the land. (3) That the mortgage deed was void, because executed with intent to defraud the defendant's creditors, and that the mortgagor did not have a homestead allotted already in other lands. In order to rebut the presumption of validity by bringing the deed under the prohibition contained in section 8, Article X of the Constitution, one of these grounds of objection mentioned must be made to appear by any person (357) who would raise a question as to the effect of the conveyance." It is this construction of the Constitution upon which the defendant relies to invalidate the contract of sale or option. JusticeMerrimon dissented from the judgment and opinion of the Court, and held the view that the homestead right, and the protection guaranteed by the Constitution against a transfer thereof without the assent and privy examination of the wife does not depend upon any state of indebtedness, nor is it required that the homestead should have been actually allotted, or that a judgment lien or other conditions indicated in the opinion of the Court should exist before the provision of Article X, section 8, of the Constitution, which forbids a conveyance of the homestead without such assent and privy examination, would become operative. He also thought that the opinion of the Court in Hughes v. Hodges
was in conflict with prior decisions of this Court in Jenkins v. Bobbitt,77 N.C. 385; Lambert v. Kinnery, 74 N.C. 348; Beavan v. Speed,ibid., 544, and Adrian v. Shaw, 82 N.C. 474, which he contended had settled the law to be that, without regard to any indebtedness of the husband, the homestead could not be conveyed without the assent and privy examination of the wife, but that the husband's deed was effectual to pass title to the land subject to the homestead. In Hughes v. Hodges
the mortgage was executed 8 January, 1876, when defendant's first wife, who did not join in the deed, was living. She died in 1881, and he was again married in 1882. There was no reservation of the homestead in the mortgage, and no judgment docketed against the mortgagor, nor was there any question of fraud involved. The suit was to foreclose the mortgage. The court below held that the land should be sole subject to *Page 289 
the homestead, or only the "reversionary interest," as it was termed inaptly, but perhaps for the sake of convenient description, in the absence of a better word. The Court, in an opinion by Justice Avery (with a dissenting opinion by Justice Merrimon, as already stated), reversed that decision and held that the deed passed the entire interest in the land to the mortgagee, encumbered only by the dower right of the first Mrs. Hodges, which expired at her death, and ordered a sale to be made accordingly. (358)
In Joyner v. Sugg, 132 N.C. 580, it appeared that there was no judgment, or other debt than those secured by the deed of trust, and no question of fraud, but the homestead right of Blaney Joyner was reserved in the deed. We held that J. A. E. Joyner, who bought at the sale under the deed of trust, acquired a good title in the land, subject to the homestead right of Blaney Joyner, as that was expressly retained in the deed, and that, as he had died, and the exemption right had ceased, a full and unencumbered title passed to her. It was further said, in arguendo, that the right to the homestead always exists and is guaranteed by the Constitution, but the homestead itself cannot come into existence until it has been "selected by the owner" of the land and actually allotted, and thereby identified, as decision in Mayho v. Cotten, 69 N.C. 293; Hager v.Nixon, ibid, 108, and as strongly intimated in Hughes v. Hodges, supra; but this expression, of course, must be viewed with due reference to the facts then under consideration, there being no judgment, or other debt, no fraud and no prior conveyance in which the homestead right had been reserved. In such a case the homestead could only be allotted upon application of the party entitled thereto. What is said in that case, therefore, is not at all in conflict with the decision in Hughes v. Hodges, supra. It was approved by this Court recently, in Davenport v. Fleming, 154, N.C. 291, in which we held (in a concise and clear-cut opinion by Justice Hoke) that the constitutional provision against conveying the homestead without the joinder or assent of the wife evidenced as therein presented, applied only and exclusively to the "homestead right," and, quoting from Joyner v.Suggs, it was further said: "A deed in trust by the husband, in which the wife does not join, reserving the homestead of the grantor therein, conveys the entire land contained in the deed of trust, subject only to the determinable exemption in $1,000 thereof from the payment of the debts of the grantor during his life," to which the learned justice added: "That case throughout is an apt authority in support of the present ruling."
We have thus reviewed two of the recent cases upon this subject, not for the purpose of testing the relative strength (359) or value of the different and, in some respects, apparently conflicting views to be found in some of the decisions upon the subject, but *Page 290 
rather for the purpose of clearly defining the proposition upon which Mr. Spence relied, in his able argument before us, to sustain the demurrer. He urged that the allegations of the complaint, with the finding of the judge as to the date of the judgment and the admission as to the marriage of the plaintiff at the time of the contract, showed that sufficient facts existed to invalidate the contract, under the decision in Hughes v.Hodges, supra, and Fleming v. Graham, 110 N.C. 374. But the weakness of this position appears when we consider that the office of a demurrer is to point out defects in the pleading, which is the object of attack, and it must stand or fall by the facts therein alleged, and extraneous matters cannot be called in aid to supply deficiencies, which is necessary to be done in order to show that the cause of action is bad. The doctrine of aider does not apply to such a case. "It is a fundamental rule of pleading that a demurrer will only lie for defects which appear upon the face of the pleading to which it is opposed, and must be decided without evidence aliunde, unless by consent of the parties. A speaking demurrer, that is, a demurrer which is founded on matter collateral to the pleading against which it is directed, is bad, and as such will be overruled. It is also a well-settled principle that, when a pleading is demurred to, resort cannot be had to other pleadings for the purpose of supporting or resisting the demurrer, but the demurrer must prevail or fall by the force of the pleading to which it is directed." 6 Enc. Pl. Pr., 297, 298. If the new or additional facts which are required to point the objection are contained in the demurrer, it is called a "speaking demurrer," and is not good pleading. Nor can the judge find facts to aid the defective pleading. It must be considered by itself and upon its own merits. The recent cases of Miller v. R. R.,154 N.C. 441, and Brewer v. Wynne, ibid., 467, furnish illustrations of the rule. There was no consent given by the plaintiff to the finding as to the date of the judgment, but he distinctly excepted to the judge's ruling, which is sufficient to include the said finding of fact. It (360) does not appear, therefore, by the complaint, whether there was a judgment which was a lien upon the property at the date of the contract, nor that there was a prior mortgage or deed of trust reserving the homestead, nor that the contract was void as to creditors, and no homestead had been allotted in other land, so as to bring the case within one of the categories stated in Hughes v. Hodges, the presumption being in favor of the validity of the contract, and the burden being on the defendant to show the contrary. It may also be remarked that the complaint does not allege that a homestead had not already been allotted to the defendant, nor is the value of the land stated. These allegations, which are omitted, may become material in certain phases of the question. *Page 291 
We must not be understood as passing upon the soundness of the objection to the complaint, even if any one or all of said facts had been alleged therein. We merely decide that, in the present state of the pleadings, the demurrer should have been overruled and the defendant allowed to answer. The facts may then be fully disclosed, no injustice will be done the plaintiff by assuming the existence of facts which do not clearly appear, and we may the better and the more safely consider and solve the interesting questions, as to the homestead right, which were argued before us. There was error in the respect indicated
Error.
Cited: S. c., 170 N.C. 103; Watters v. Hedgpeth, 172 N.C. 312.
(361)